## SOUTHERN SURETY CO. v. BUS UNION STATION. (No. 2338.)

Court of Civil Appeals of Texas. El Paso. Dec. 19, 1929.

Rehearing Denied Jan. 16, 1930.

Taylor, Muse & Taylor and John T. Suggs, all of Wichita Falls, for appellant.

Walsh & Smith and Bonner, Bonner & Childress, all of Wichita Falls, for appellee.

WALTHALL, J. This suit was brought by appellee, Bus Union Station, against appellant, Southern Surety Company, a corporation, to recover on an obligation executed by appellant to appellee to secure it against pecuniary loss by reason of any act of fraud, theft, larceny, dishonesty, forgery, embezzlement, wrongful conversion, or abstraction,

on the part of G. D. Stockton, an employee of appellee.

Appellee alleged that it is a business at all the times herein mentioned owned by the North Texas Coach Company, a corporation, the Wichita Falls Bus Company, a corporation, the Southern Bus Company, a corporation, the Rainbow Bus Company, a corporation, the Oklahoma Transportation Company, a corporation, the Burk-Wichita Line, a corporation, the Lone Star Stage Line, a corporation, E. G. Abbott, and the Shipley Transportation Company, Incorporated, the Gainesville-Wichita Stage Line, a partnership, composed of Chas. McDearmon and W. B. Turbeville; that the said Bus Union Station carries on a business of operating a bus terminal in the city of Wichita Falls, Wichita county, Tex., and maintains a Union Station for the above-mentioned bus lines and companies, corporations, and individuals, to use in the operation of their said business, being a point from which all busses leave with their passengers, and to which all busses come upon their arrival, to discharge their passengers; that said business is conducted under the name of the Bus Union Station, and separate books and records kept for said business, and that said business keeps a bank account, and that all checks in connection with said business are written and signed by the Bus Union Station; that said Bus Union Station sells all tickets over all lines, receives the money therefor, deposits it to its credit, writes its checks to the stage lines and individuals, assesses a monthly service rental charge against each company, employs a manager who has general supervision and control of the business of the station, custody and control of all books and records, tickets, and property, and all moneys received, deposits the moneys in the bank, writes checks to the various companies for the amounts due each, pays all salaries and expenses out of the moneys received, etc.; that the general policies of said Bus Union Station are intrusted to a board of directors, from the said companies, naming them, states the duties of said board, among which is to direct the policies of the Bus Union Station, employment of a manager, the making of contract, etc.; that on September 3, 1926, appellee employed as its general manager one G. D. Stockton, who on said day entered upon his duties as such manager with the power, duty, and authority, as stated, and continued as such until the 9th day of July, 1928, when he was discharged; that on the 18th day of September, 1926, the appellant, Southern Surety Company, for a valuable consideration paid by appellee, entered into its surety contract No. 8895 with appellee, whereby appellant agreed to pay to appellee, as employer, such pecuniary loss, not exceeding $2,000, as appellee, as employer, should sustain of money or other personal property,

including that for which the employer is responsible, by any act or acts of fraud, dishonesty, forgery, theft, larceny, embezzlement, wrongful conversion, or abstraction, on the part of the said G. D. Stockton, manager and employee, directly, or through connivance with others, while in any position or at any location in the employ of said employer, and during the period commencing September 3, 1926, and ending with the termination of this bond; that at the time of entering into said contract appellant's local agent, acting for appellant, was fully advised of all the facts as to the nature of appellee's business and the parties interested, as stated, and, being so advised, said agent advised appellee that the surety policy should be written in the name of appellee as employer, as it was written, and thereafter said local agent prepared the policy, and secured the signatures of appellee's proper officers and delivered same to appellee who paid the annual premium of $10, and has continued to pay said premiums, and that said bond was in force and effect on July 9, 1928; appellee refers to other provisions of said bond not necessary to state here; that appellee complied with all the terms and conditions of the bond.

Appellee alleges that on or about July 8th, and while the said bond was in force, said Stockton collected in money of appellee from said business $2,469.50, and on said day did fraudulently, dishonestly, and wrongfully convert same to his own use and benefit, or to the use and benefit of some other person to appellee unknown; that, upon discovering such conversion, appellee gave due notice to appellant and made proof of such conversion; made demand of appellant that it pay same to appellee, and refusal to pay, to appellee's damage in the sum stated.

By supplemental petition it is alleged: "Plaintiffs (then naming the parties as in the original petition) at all times mentioned, collectively doing business in Wichita Falls under the name of Bus Union Station, and being the sole owners of the properties and station equipment, operated under said name, come now and file this their first supplemental petition in reply to the First Amended Original Answer of the defendant, Southern Surety Company, and for their supplemental plaintiffs say:" Then, as said several parties as plaintiffs further answer, etc.

Appellant answered by general demurrer, special exceptions, general denial, special answer, specially pleaded the bond and the provisions thereof, the compliance by Stockton with the terms of the bond, and that no liability existed, violation by appellee of the provisions of the bond, failure to notify appellant as required, pleaded the statute of frauds, pleaded that the bond was unenforceable, in that the bond was not payable to any obligee, and showed on its face to be wholly payable to an entity, without naming

the persons, corporations, individuals, or partnerships comprising same, and therefore not payable to any person recognized in law, and that such was known to appellee before and subsequent to the execution of said bond.

The case was submitted to a jury on three special issues: On issues 1 and 2 the jury found that G. D. Stockton, while employed by appellee (between January 1 and July 9, 1928) through fraud or dishonesty or wrongful conversion, appropriated $2,525.59 of appellee's money. In answer to issue 3 the jury found that appellee delivered notice of the loss inquired about to appellant at its general office within ten days after discovery of such loss by appellee.

The court gave some special charges requested by appellant, and refused others, which we need not here state. On the verdict returned the court entered judgment that "the plaintiffs," naming the several corporations, and others, parties at interest as stated in the petition, "co-partners doing business under the firm name and style of Gainesville-Wichita Stage Line, and all the plaintiffs owning at all the times involved herein and carrying on the business known as Bus Union Station, jointly do have and recover" of appellant the sum of $2,000, and interest from November 8, 1928, and costs.

The court overruled appellant's amended motion for a new trial, and appellant gave notice, and has perfected this appeal.

### Opinion.

Appellee objects to the consideration of many of appellant's propositions as not being germane to the assignment or assignments to which they refer. Without discussing the objections made, we will discuss such of the propositions as we deem necessary to a proper disposition of the case.

By several propositions appellant submits, in substance, that recovery cannot be had on the bond sued on, for the reason that the bond is void and unenforceable, in that it is not made payable to an obligee who can, in law, enforce its performance, and asserting the general rule to be that a bond to be valid, like any other contract, requires at least two contracting parties, each capable of contracting; that the bond not being made payable to the several parties composing the Bus Union Station, and the bond not reciting the names of the parties who compose the Bus Union Station, the Bus Union Station is not a legal entity, and cannot, in law contract or be contracted with.

Appellant refers us, as sustaining its proposition, to Kingsland & Douglass Mfg. Co. v. Mitchell et al. (Tex. Civ. App.) 36 S. W. 757; Frank v. Tatum, 87 Tex. 204, 25 S. W. 409; Burton v. Roff (Tex. Civ. App.) 275 S. W. 273, 274; Bank of Marshall v. Alexander (Tex. Civ. App.) 236 S. W. 229, and other cases similarly holding. It will be noted, however, that in each of the cases cited the court was not discussing the question as to whether the parties at interest, such as Bus Union Station, could, in a trade or partnership name, make a contract valid in law, but were discussing whether such party could sue as such, and held that, in "the absence of statutory provision to that effect, the individuals composing a partnership must sue or be sued"; that "a partnership, not being a legal entity cannot be sued as such." The case of Stulz v. Lentin, 220 Mo. App. 840, 295 S. W. 487, a Missouri case, a bond given to perfect an appeal, is not in point. The bond should have acknowledged an indebtedness to Edith Stutz, but instead named Edith Lentin. The court very properly said there was no obligee. It is the law, however, in this state, as submitted by appellant, and as held in the cases referred to, that suits in courts can only be maintained by and against individuals or corporations. To avoid the possible effect of the above-stated rule, appellee filed the trial amendment making the individual parties at interest parties plaintiff.

We find no verified plea in the answer of appellant in reply to such trial amendment setting up that appellee has not legal capacity to sue; the truth of such pleading, in view of the trial amendment, not appearing of record. We must assume that appellant thereafter had no objection as to the capacity of appellee to sue. But we will later discuss the issue presented.

The record beyond question shows by proof and admission the defalcation of Stockton to the full amount of the judgment rendered against appellant, and we need not review the suggestions of error in the matter of giving the proper notices, admission of evidence, or the giving or refusing any charge or any argument made as being prejudicial.

It was not necessary, we think, to submit to the jury a finding as to the amount of the loss of each individual party at interest, or for the judgment to indicate the amount due the individual parties. The bond was not so written, but is made payable jointly in a lump sum. It is a matter for the several parties at interest to adjust among themselves the amount due each.

The suit was in the terms of the bond, and not by any or all of the individuals for the several amounts due each. Any amount paid on the judgment would be a bar pro tanto of the individual interests of the parties to the judgment.

The contract policy sued on is shown to have been executed by appellant's general manager and attorney in fact, at Dallas, Tex. Appellee alleges that appellant company is a corporation organized under the laws of the state of Iowa, but having a permit to do business in this state. Appellant did not specially deny that it did not have a permit to do business in Texas, but specially pleaded said bond and each and every provision

thereof and a compliance with it, and denied liability by reason of the matters pleaded. No evidence was offered tending to show its permit to do business in this state. Appellant submits that a foreign insurance and bonding corporation can act only by virtue of a permit and a failure to prove a permit, the judgment predicated thereon cannot stand, and refers us to Victor Refining Company et al. v. City National Bank, 115 Tex. 71, 274 S. W. 561, as sustaining its contention. We do not regard the case as in point. We need not review it. Article 1529 of our statutes requires any corporation for pecuniary profit, except as provided, organized or created under the laws of any other state, etc., desiring to transact or solicit business in this state, or to establish a general or special office in this state, to file with the secretary of state a certified copy of its articles of incorporation, and thereupon such official shall issue a permit to transact business in this state.

Article 1538 excepts, among others, such corporations as are required to procure certificates of authority to do business from the commissioner of insurance or the banking commissioner. Articles 4969 and 4972 applying to fidelity, guaranty, and surety companies, to act as surety, and embracing and applying to all foreign corporations transacting the business of a guaranty and fidelity company in this state, and providing that such corporation may "act as surety and guarantor of the fidelity of employees," etc., such corporation is such as one, we think, to which, under article 4972 of our statutes, the commissioners of insurance shall issue a certificate setting forth that such company has qualified and is authorized to do business in this state, and thereby exempting such corporation from procuring such permit, as provided by above articles 1529 and 1538. Where, as here, appellant has pleaded the contract sued on and the contract introduced in evidence, and performance on its part, proof that it had such certificate to do business, we think, may be dispensed with. 14 C. J. p. 166, par. 171, and notes. The rule seems to be general that express proof of the performance of conditions imposed by statute is unnecessary where user or the exercise of corporate powers is shown.

Only one other question remains that we think to discuss.

▇ Appellant submits that the bond, that

is, the surety contract, made payable to Bus Union Station, is void and unenforceable, in that it is not upon its face payable to a person, corporation, or individual or partners, naming them. In other words, the proposition in substance is, that the bond is void because contracted in the trade-name of the parties at interest, and not in their individual names. It is true, as above stated, that only an individual or a corporation may sue to enforce the contract, and for reasons stated in the cases referred to, such as Frank v. Tatum, supra, a partnership, their individual names undisclosed, but doing business together, not being a legal entity at common law. But the same reason does not apply where a contractual relation is disclosed. A partnership or the trade-name adopted by parties doing business together in such name is a contractual status. The names of the parties to be bound may be shown by parol evidence. In the case of Heffron v. Pollard, 73 Tex. 96, 11 S. W. 165, 167, 15 Am. St. Rep. 764, it is said:

"We understand the law to be that when a party for the purpose of transacting business adopts an assumed name, whether it be fictitious or the name of another, he is bound by a contract made in that name." See, also, Coverdill v. Seymour, 94 Tex. 1, 57 S. W. 37.

But we need not, on this point, do more than refer to the case of Martin v. Hemphill, 237 S. W. 550, 20 A. L. R. 984, in which the Commission of Appeals, section B, by Judge Powell, fully discusses the subject involved here, holding in substance, in that case, that Martin had the right to assume the trade-name of "McDonald Bros.," or any other name. In that case Martin alleged that he was so doing business; that he and Hemphill agreed it was best to do so. Here it is alleged that appellant's local agent, after being fully advised as to the nature and status of Bus Union Station business and the parties interested, advised that the surety policy be written in that name, and that the said agent, acting for appellant, prepared the policy and secured the signatures of the officers and delivered the policy. We have no doubt of the enforceable nature of the policy.

We have not discussed all of the propositions presented, but those not discussed have been fully considered, and are overruled.

The case is affirmed.