## QUILLIN et ux. v. STATE TRUST CO.
### No. 12650.

Court of Civil Appeals of Texas. Fort Worth.
March 19, 1932.

Rehearing Denied May 7, 1932.

J. A. Lantz and J. R. Wilson, both of Wichita Falls, for appellants.

Mathis & Caldwell, of Wichita Falls, for appellee.

BUCK, J.

The State Trust Company, a corporation, sued M. A. Quillin and his wife, Alta C. Quillin, on a note secured by a mechanic's lien, dated April 10, 1923, payable in three annual payments, of $833.33 each, due one, two, and three years after date. The note and mechanic's lien was in favor of the Oil Center Lumber Company, of Wichita Falls, and was for lumber and building material furnished by said lumber company to the Quillins.

The defendants pleaded a general demurrer, and the defendant Alta C. Quillin further pleaded that the indebtedness recited in said notes was not for improvements to her separate estate, nor for necessities, nor for a tort committed by her, nor for any other indebtedness which would make said defendant liable on said notes.

Defendant Quillin alleged that on April 10, 1923, and until August 21, 1923, and for a long time prior to and subsequent to said first date, he was engaged in the lumber business in Wichita county, Tex., operating said business under the assumed name of Oil Center Lumber Company; that during said time Annie A. Putman, wife of H. W. Putman, advanced some money to the said M. A. Quillin for the purpose of purchasing an interest in said business, and that defendant in good faith at that time thought that he was operating said business as a partnership with Annie A. Putman as his partner, but he alleged that no partnership existed between him and Annie A. Putman, and that the business was managed, controlled, and owned by him; that the said Annie A. Putman, during all of the time said business was operating under the assumed name of Oil Center Lumber Company, was the wife of H. W. Putman, and had no legal authority to enter into a partnership relation with defendant; that plaintiff knew such facts, or by the use of diligence could have known them.

It was further alleged that the State Trust Company, during August, 1923, was engaged in the business of loaning money, and had as its active vice president and treasurer, Wm. E. Huff, who was acting as its representative and agent in this transaction; that on August 21, 1923, defendant M. A. Quillin approached plaintiff through said Wm. E. Huff, and asked for a loan of $2,500, due in annual payments of three notes; that said Huff, acting for plaintiff, asked the defendant on what property could he give security, and defendant stated to plaintiff he could give him a lien on property described in plaintiff's first original amended petition, which was then his homestead; that plaintiff then suggested that defendant execute a purported mechanic's and materialman's lien on said premises for $2,500 to the said Oil Center Lumber Company, and date same as of the approximate date when the first work was done on the said structure, and that for defendant Alta C. Quillin, wife of M. A. Quillin, to sign and acknowledge same with him, and that the Oil Center Lumber Company would assign said purported lien to the State Trust Company; that pursuant to said request, and in accordance with said instructions of Wm. E. Huff, said defendants did execute said purported mechanic's and materialman's lien, dating same April 10, 1923, and each acknowledged same on August 21, 1923, and that said M. A. Quillin, on behalf of the Oil Center Lumber Company, made a purported transfer to the State Trust Company on August 21, 1923, and acknowledged same on August 21, 1923, and on said date the $2,500 was advanced to the defendant M. A. Quillin; that defendant has paid on said notes on the hereinafter dates mentioned, the following amounts: $500 on the principal on December 21, 1927; $25 on January 21, 1928; $200 on July 27, 1929; $150 on September 3, 1929; $150 on December 2, 1929; $40 on January 12, 1930; $40 on March 6, 1930.

Defendants further alleged that the purported mechanic's and materialman's lien is

void for the reason that said instrument purporting to be a mechanic's and materialman's lien was not executed until long after the material and lumber had been furnished for the building of said structure. Defendant further alleged that said lien was void for the reason that M. A. Quillin was in fact the Oil Center Lumber Company, and that the purported lien as given to the Oil Center Lumber Company by defendants was merely a transaction between M. A. Quillin and his wife as one party and M. A. Quillin as the Oil Center Lumber Company as the other party; and that under such facts there could be no valid lien given.

On April 24, 1931, plaintiff filed its first supplemental petition, in which it stated that on or about August 15, 1923, the defendant M. A. Quillin, as one of the owners and as agent and representative of the Oil Center Lumber Company, a copartnership composed of M. A. Quillin and Annie A. Putman, approached the plaintiff through Wm. E. Huff, its representative, for the purpose of selling to plaintiff the mechanic's lien note theretofore executed on April 10, 1923, for $2,500; that plaintiff, after inspecting the premises agreed to purchase said note provided the same was made into three notes, due in annual payments; that at no time did plaintiff or its representative have any notice of any defect in said note or said lien, and in truth and in fact said M. A. Quillin as representative of the Oil Center Lumber Company, and one of the owners thereof, represented to this plaintiff through its agent that said notes and said lien were good, valid, and subsisting liens and notes, and that he and his wife would pay said notes at maturity thereof according to the terms; that prior to August 21, 1923, the Oil Center Lumber Company filed its certificate under the assumed name in the county clerk's office of Wichita county, showing that M. A. Quillin and Annie A. Putman were operating said concern as a partnership and were the owners thereof, and, therefore, because of these facts, said defendants are estopped from denying the validity of the transfer involved in this suit; that said defendants are further estopped from denying the validity of said transfer because on or about May 5, 1926, each of said defendants entered into a written renewal and extension agreement concerning said liens and concerning said notes long after said notes and liens had been transferred to this plaintiff, and thereby said defendants admitted their liability on said notes and agreed to pay them to this plaintiff; that defendants are further estopped from denying liability because of the transfer of said notes, because they have made various and sundry payments on the notes after same were transferred with full knowledge as to the method and manner that said notes and said liens were transferred to the plaintiff; that

said defendants are estopped from denying liability on the notes and denying validity of the liens because of full knowledge of all the facts concerning the execution of said notes and liens; and that defendants did, on May 5, 1926, renew and extend the notes and liens as aforesaid.

The cause was tried before the court without the intervention of a jury, and judgment was rendered for plaintiff for $2,431.46 against defendant M. A. Quillin, and a foreclosure of the mechanic's lien was adjudged against both of defendants. From this judgment the defendants have appealed.

The court filed findings of fact and conclusions of law as follows:

"Findings of Fact.

"Sometime in March, 1923, the defendant M. A. Quillin, purchased the following described property, situated in Wichita county, Texas, towit: All of Lot No. Three (3) in Block 'A' of the 2nd Floral Heights Addition to the City of Wichita Falls, Texas.

"This property was, at the time of its purchase by M. A. Quillin, a vacant lot.

"At the time it was acquired by Quillin he was a married man and since he acquired said property he has used, occupied and controlled and claimed said property as his homestead.

"The Oil Center Lumber Company was a lumber company engaged in the retail lumber business in the City of Wichita Falls, Texas, and vicinity, and was a firm composed of M. A. Quillin and Annie A. Putman. M. A. Quillin lived in Wichita Falls, Texas, and Annie A. Putman was a married woman, but did not reside in the state of Texas, but lived with her husband outside the state of Texas.

"Her husband was a wholesale lumber dealer. Desiring to erect a home on the above described property, on April 10, 1923, M. A. Quillin and his wife, Alta C. Quillin made, executed, acknowledged and delivered to the Oil Center Lumber Company a mechanic's and materialman's lien on the above described property.

"This lien was given to secure the payment of one note in the sum of Twenty-five Hundred ($2,500.00) dollars dated April 10, 1923, also signed by M. A. Quillin and Alta C. Quillin, and being payable to the Oil Center Lumber Company.

"This note was due in three annual payments. The lien above referred to was acknowledged by M. A. Quillin and Alta C. Quillin, in statutory form, before a notary public in and for Wichita County, Texas, the acknowledgment of the wife being taken privily and apart from her husband. The acknowledgment was dated April 10, 1923, the same date as the date of the lien. This lien was given for lumber and material to be furnished and not for labor.

"The above mentioned mechanic's lien contained the following statement in the body of said lien, towit: 'for and in consideration of a certain bill of lumber and material this day sold and furnished to us, the undersigned, M. A. Quillin and Alta C. Quillin, by the Oil Center Lumber Company, the receipt of which is hereby acknowledged, amounting to the sum of $2,500.00 said lumber and material to be hereafter delivered to us by said Oil Center Lumber Company, to be used by us in and for the erection, repairs and improvements on our homestead.'

"I find from the testimony herein that at the time of the execution and acknowledgment of said lien above referred to and the note above referred to, that no part of said improvements had been made on said property above described, and that no part of said lumber and building material had been furnished and delivered at the time of the execution and acknowledgment of said lien.

"Thereafter and prior to August 23, 1923, the Oil Center Lumber Company, through M. A. Quillin, approached Wm. E. Huff, an officer and agent of the plaintiff herein, desiring to sell to said State Trust Company, the plaintiff herein, said note and lien above referred to, and after said conversation, the said Wm. E. Huff agreed to purchase said note and lien from said Oil Center Lumber Company, provided the note was rearranged and made into three notes, rather than one note.

"Thereafter, towit, on August 21, 1923, to correct the description of said note and make it into three notes, a second materialman's and mechanic's lien was executed, acknowledged and delivered by said M. A. Quillin and wife, Alta C. Quillin, to the said Oil Center Lumber Company on the property above described to secure the payment of Twenty-five Hundred '($2,500.00) dollars evidenced by three notes, each for Eight Hundred Thirty-three dollars, and thirty-three cents ($833.33) said notes being due one, two and three years from April 10, 1923, and being payable to the Oil Center Lumber Company, bearing interest from their date at the rate of ten per cent. per annum, and providing for attorneys' fees. These are the notes sued upon in this cause, which were thereafter, on June 10, 1923, renewed and extended.

"This second mechanic's lien just above referred to was acknowledged, in statutory form by said M. A. Quillin and wife, Alta C. Quillin, before John P. Marrs, a notary public in and for Wichita County, Texas, the date of the lien being April 10, 1923, and the date of the acknowledgment being August 21, 1923.

"This lien was similar, in its terms, to the lien dated April 10, 1923, above mentioned, and contained the same statement as set out above, with reference to the material to oe hereafter delivered to said M. A. Quillin and Alta C. Quillin by the said Oil Center Lumber Company.

"This second lien, dated August 21, 1923, was the same as the lien dated April 10, 1923, and was given only for the purpose of correctly describing the three mechanic's lien notes, that is the Twenty-five Hundred ($2,500.00) dollar note above mentioned was divided into three notes of Eight Hundred and Thirty-three ($833.33) and thirty-three cents each.

"After the execution of said second mechanic's lien above referred to, said Oil Center Lumber Company sold, transferred and assigned said three notes above described, and said liens above described to the said State Trust Company, the plaintiff herein, and said plaintiff paid the full sum of Twenty-five Hundred ($2,500.00) dollars for said notes and liens, less a charge for examining said abstract and bringing said abstract down to date, and filing certain instruments for record. The check issued by said State Trust Company was made payable to the Oil Center Lumber Company, in payment of said notes and liens.

"Annie A. Putman, a member of the firm of the Oil Center Lumber Company, did not live in Wichita County, Texas, and said M. A. Quillin had, since the organization of the Oil Center Lumber Company, managed said lumber company and the transfer of said notes and liens above referred to, to the State Trust Company, was never questioned by said Annie A. Putman.

"The improvements were completed on this property not later than July 1, 1923.

"I find from the testimony that the State Trust Company, plaintiff herein, purchased said notes above described and said liens above described, for a valuable consideration, before maturity of any of said notes, without notice of any defect in said notes or liens, and I find from the testimony that said State Trust Company was a bona fide holder and owner of said notes and liens for value before maturity without notice of any defects therein.

"Some or all of the lumber used in the erection of the improvements on the property above described was furnished by M. A. Quillin individually, and he did not secure this lumber from the Oil Center Lumber Company, but this fact was not known to plaintiff at the time it purchased said notes and liens; Alta C. Quillin did know where the lumber came from, and the improvements were completed on this property not later than July 1, 1923.

"Thereafter, towit, on or about the 10th day of June, 1926, M. A. Quillin and wife, by written instrument duly signed and acknowledged by M. A. Quillin and his wife, and also signed and acknowledged by R. E. Huff, President of the plaintiff corporation, renewed and extended said notes above described and the liens se-

curing same, making said notes mature on April 10, 1927, April 10, 1928, and April 10, 1929, the acknowledgment on said extension agreement being in statutory form, and acknowledged by M. A. Quillin and his wife, Alta C. Quillin, the acknowledgment of Alta C. Quillin being taken privily and apart from her husband, M. A. Quillin, which extension agreement was duly filed for record in the mechanic's lien records of Wichita County, Texas.

"Various payments were made upon these notes by the defendants, including an item of Five Hundred ($500.00) dollars upon the principal, said Five Hundred ($500.00) dollars upon the principal being made on or about December 21, 1927.

"At no time did the defendants, or either of them, dispute their liability upon these notes or liens, and neither of said defendants knew of any defense that they might have to said notes or the liens sought to be foreclosed in this suit, until after this suit was filed.

"I find from the testimony introduced herein that at the time of the trial of this case, there was due upon these notes the sum of Two Thousand ($2,000.00) dollars principal, and Four Hundred and Thirty-one dollars and forty-six cents ($431.46) interest.

"I further find that the defendant, Alta C. Quillin is not personally liable on said notes.

"I further find, from the testimony, that if said liens above mentioned were voidable in any respect, that the acts and conduct of the defendants as above set out, estopped said defendants from denying the validity of said notes and liens.

"Conclusions of Law.

"I therefore conclude as a matter of law, that plaintiff is entitled to recover of and from the defendant, M. A. Quillin, the sum of Twenty-four Hundred and Thirty-one Dollars and Forty-six cents ($2,431.46) and that said mechanic's and materialman's liens on the property above described should be foreclosed against each of the defendants, and that order of sale may issue.

"I find that Alta C. Quillin did not know that the lumber and material so furnished belonged to M. A. Quillin personally and not to the Oil Center Lumber Company."

Opinion.

The first, second, third, and fourth propositions will be discussed together. The first proposition is that the Oil Center Lumber Company was composed of the defendant M. A. Quillin and a married woman, Mrs. Annie A. Putman, who lived in Missouri, and it follows as a matter of law that a married woman could not be a partner in business in Texas, but said Annie A. Putman was merely a creditor of the said M. A. Quillin.

■ An innocent purchaser before maturity of a mechanic's lien contract and notes covering a homestead is entitled to foreclose the lien though the original transaction as between the parties was simulated and irregular, and the trial court was correct in decreeing such foreclosure. Appellee alleged that it purchased the note sued upon and the lien sought to be foreclosed before the maturity of any of said notes and without notice of any defect in said notes; paid a valuable consideration therefor; and further alleged that it was the holder in due course and an innocent purchaser of said notes, before maturity, for value paid, without notice of any defect in said notes or in said lien given to secure said notes.

The trial court found as a fact that appellee purchased the notes involved in this suit, and the lien herein sought to be foreclosed, for a valuable consideration, before the maturity of any of the notes, without notice of any defect in said notes and liens; and the court further found that the appellee was a bone fide holder of said notes and liens, for value, before maturity, without notice of any defects therein. The improvements were completed on the property in question not later than July 1, 1923. The check issued by the appellee in payment of the notes and liens was dated August 21, 1923. The three notes, secured by the lien, purchased by the appellee, were each dated April 10, 1923, and matured one, two, and three years after their date. W. E. Huff, president of the appellee corporation, purchased these notes in behalf of the State Trust Company, and he did not know that there was anything wrong with the notes involved in this suit at the time he purchased them. In fact, defendant M. A. Quillin admitted on the witness stand that he did not know there was any defect in any of the notes, or the lien, until after he had consulted with his attorney and suit had been filed. Appellee paid the full $2,500 for the notes and lien, less attorney's fees and abstract fees. Both mechanic's liens were regular upon their face, and created a valid obligation; they were signed and acknowledged by the husband and wife in statutory form. Both the original note for $2,500 and the three notes for $833.33 each were regular upon their face, and created valid obligations. It is well established in this state that, where a husband and wife voluntarily execute a mechanic's lien contract upon their homestead, or where they create any other apparent lien upon the homestead, if such liens get into the hands of an innocent purchaser before maturity, such liens will be enforced against the homestead, even though the lien was simulated or void, as between the original parties.

In the case of Harrison v. First National Bank of Lewisville, 224 S. W. 269, 273, by this court, speaking through Justice Dunklin, it is said: "But notwithstanding the provisions of article 16, § 50, of the Constitution, quoted

above, an innocent purchaser of a vendor's lien note, given in a simulated sale such as that of Hagler and wife to Crockett, acquires the right to enforce the lien, by reason of the rule which protects bona fide innocent purchasers for value. Graves v. Kinney, 95 Tex. 210, 66 S. W. 293."

In Garrett v. Katz (Tex. Civ. App.) 23 S.W. (2d) 436, 438, it is said: "In a number of cases, where simulated or fictitious transactions, giving rise to ostensible liens on homesteads, were involved, our appellate courts have repeatedly held that bona fide purchasers of such liens should be protected. See Hurt v. Cooper, 63 Tex. 362; Love v. Breedlove, 75 Tex. 649, 13 S. W. 222; Eylar v. Eylar; 60 Tex. 315, 320; Graves v. Kinney, 95 Tex. 210, 66 S. W. 295; Harrison v. First National Bank (Tex. Civ. App.) 224 S. W. 269."

See Cain v. Bonner (Tex. Civ. App.) 149 S. W. 702, affirmed by the Supreme Court in 108 Tex. 399, 194 S. W. 1098, 3 A. L. R. 874; Melcher v. Higbee (Tex. Civ. App.) 165 S. W. 478; Bernstein v. Hibbs (Tex. Civ. App.) 284 S. W. 234, and authorities there cited.

In the last cited case the facts show a case quite similar to the case at bar. Hibbs and wife gave a mechanic's lien to a lumber company to secure the payment of two $1,000 notes, which notes and lien were thereafter purchased by Mrs. Bernstein. The notes and lien were then extended by Mrs. Bernstein. In this case the notes and lien were regular upon their face. The notes recited that they were given in part payment for the construction of improvements upon the lot upon which the lien was given. The court held that, if appellant Mrs. Bernstein was an innocent purchaser of the notes and lien, she would be entitled to a judgment foreclosing the lien. In this case it is said, quoting from the headnotes: "Innocent purchaser of mechanic's lien contract and notes covering homestead may foreclose the lien, though the original transaction was simulated."

 We do not think there is any error in the trial court's ignoring the coverture of Mrs. Annie A. Putman. Such plea is a personal one to the married woman herself, and no other person may avoid liability because of the coverture of a party to the transaction but who is not a party to the suit. As said by Mr. Speer on the Law of Marital Rights in Texas, par. 186: "Though the wife may not be bound by her contract, the other party is not for that reason relieved. The rule is thus stated by Justice Brown, now Chief Justice: [Pitts v. Elser, 87 Tex. 347, 348, 28 S. W. 518] 'If she (the wife) contract to buy on credit and execute a note for the price, she may or not, as she may elect, proceed with the contract, and the person contracting with her cannot refuse to carry out

the agreement because she is a married woman.' The principal is that, like all other voidable contracts, the one in whose favor dissolving vice exists may waive it, in which event the other can not complain, for he has his bargain."

In Crutcher v. Sligar, 224 S. W. 227, 229, by this court, writ of error refused, it is said: "A married woman may avoid her contract generally * * * on the ground of her coverture if done in a reasonable time, but those laboring under no disability who deal with her cannot avoid responsibility merely because she did not have the capacity to contract."

See Commercial Hotel v. Weeks (Tex. Civ. App.) 254 S. W. 521, writ of error dismissed; Frazier v. Lambert, 53 Tex. Civ. App. 506, 115 S. W. 1174; Kollaer v. Puckett (Tex. Civ. App.) 232 S. W. 914.

In Carter Merchandise Co. v. Dickson, 39 S. C. 433, 17 S. E. 996, the Supreme Court of South Carolina, in discussing the liability of a maker of a promissory note held by a partnership, said: "The mere fact that one member of the firm is a married woman cannot alter the debtor's relation to that firm. If any power exists in this particular married woman to avail herself of any personal privilege or protection because of her coverture, she certainly has not exercised it in this instance. It is not in the power of this defendant to set up for her any personal privilege against her solemn protest."

While we have not discussed all of the assignments, yet we think that from what has been said it is apparent that the judgment of the trial court should be affirmed. We adopt the findings of facts by the trial court, and affirm the judgment.