**UPTMOR** et ux. v. **JANES** et al.

No. 2706.

Court of Civil Appeals of Texas. Waco.
March 11, 1948.

Rehearing Denied April 15, 1948.

236

J. W. Spivey and J. A. Kibler, both of Waco, for appellants.

John B. McNamara and H. S. Beard, both of Waco, for appellees.

LESTER, Chief Justice.

This is a trespass to try title suit brought by Will Uptmor and wife. The facts reveal that Uptmor was indebted to the West National Bank in the sum of approximately $700, and to the Internal Revenue Department of the United States for something in excess of $1,800 as income tax which had accumulated over a period of eight or ten years. Uptmor borrowed from the West bank the sum of $2,500 and he and his wife executed a deed of trust upon their homestead for the purpose of securing said amount. Out of the amount so borrowed he paid to the Internal Revenue Department the sum of $1,829 for income tax that was then due. He also owed D. T. Janes the sum of $481.25, which was secured by a mechanic's and materialman's lien on his homestead, and owed other indebtedness that he was anxious to pay. The evidence shows that he made a trade with R. M. Deveny to the effect that he and his wife would deed to Deveny their homestead for a recited consideration of $9,000, that Deveny would execute a note for the sum of $3,750 as part of the purchase price, and that Deveny would re-convey the property to the Uptmors after they received the money from the note. Uptmor and his wife, on October 27, 1937, executed a warranty deed in which they purported to convey the land in question for a recited consideration of $9,000, and as part of said sum a note for $3,750 was executed by Deveny, payable to the guardian of James W. Vitatoe, an N. C. M., he having prior thereto agreed to advance for his ward that amount as part of the purchase price of said property. A vendor's lien was reserved in said deed to secure the payment of said note and it was further secured by a deed of trust upon said property. Out of the $3,750 Uptmor paid the West bank $1,829.77, state and county taxes on the land in the sum of $179.88, and $481.25 to D. T. Janes, the amount due on the mechanic's lien note. On October 27, 1937, the day the Uptmors acknowledged their deed to Deveny, the said Deveny executed his deed conveying the property back to Uptmor and Uptmor assumed the payment of the $3,750 note, but this deed was not filed for record until October 29th at 5:00 o'clock p. m.

Uptmor defaulted in the payment of the interest on said note as it became due. The substitute trustee, who will be hereafter referred to as the guardian's attorney, posted notices advertising the property for sale to be had on the 7th day of May, 1940. On May 2nd Uptmor and his wife filed in the district court their petition alleging that the lien was invalid, in that the property involved was their

homestead and that the transaction between them and Deveny was a simulated one for the purpose of borrowing money and not a bona fide sale as the deed would imply; and charged all the interested parties with notice of all the facts surrounding the transaction, and secured a temporary injunction restraining the sale.

The guardian answered, alleging that he advanced the money of his ward upon the representation and in the belief that the deed was a bona fide conveyance of the title to said property, and prayed that his debt be established and that he be permitted to proceed with his contemplated sale.

Some time after the restraining order was issued Uptmor began an effort to refinance this indebtedness and took the matter up with a party who agreed to advance the money, but by reason of the Uptmors having challenged the validity of the lien securing the note, he demanded that a judgment be rendered against Uptmor on the note, with foreclosure of the lien. The testimony shows that Uptmor made repeated requests of his lawyer to have the judgment entered so that he could proceed with his trade to re-finance the loan. He also went to see the attorney for the guardian and made inquiry as to when they were going to have the judgment entered, and expressed a desire that it be done without further delay. On January 4, 1941, the guardian filed an amended cross-action in which he sought judgment for the amount of his debt and a foreclosure of the lien; and by mutual consent of the attorneys the court, on the same date, entered judgment for the amount of said debt, with foreclosure of said lien, which was in accordance with the request of Uptmor. No process was served upon the Uptmors and they were not personally in court at the time the judgment was entered. In due time an order of sale was issued and the property was sold, on March 4, 1941, to D. T. Janes for the sum of $5,016.96.

Appellants thereafter filed this suit in trespass to try title to recover said property, alleging the transaction between them and Deveny was not a bona fide sale but a simulated one for the purpose of borrowing money on their homestead and that all parties concerned had full knowledge of such facts; that the judgment entered on January 4, 1941, was invalid for the reason they were not served with process on the cross-action and made no appearance and no one had any authority to appear for them.

The case was tried before a jury, which made the following material findings: (1) that Uptmor's attorney was authorized to represent him on said occasion; (2) that the guardian's attorney did not advise Uptmor to make a pretended sale of the land to Deveny in order to fix a lien upon his homestead; (3) that at or prior to the time that the guardian advanced the $3,750 his attorney did not have either information or knowledge that the arrangement between the Uptmors and Deveny was a pretended sale; (4) that the guardian did not know before he advanced the $3,750 that the sale by Uptmor to Deveny was a pretended one; (5) that Will Uptmor authorized and requested that the judgment against him for foreclosure of the lien on his homestead be entered; and (6) that D. T. Janes knew at the time of his purchase of the land in question at foreclosure sale that the sale between the Uptmors and Deveny was a pretended one for the purpose of creating a lien upon their homestead. Based upon the foregoing findings, the court rendered judgment against appellants.

The Constitution of this state, Article 16, Section 50, Vernon's Ann.St., provides: "No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void." This provision has been liberally construed and zealously guarded in behalf of the homesteaders by the courts of this state. The appellants are entitled to relief under its provisions if they have not, by their conduct, es-

topped themselves from claiming thereunder. Their contention is that for the purpose of borrowing money and with the intent of placing an invalid lien on their homestead, by arrangements previously made with Deveny, they executed to him a warranty deed purporting to convey absolute title to their property to him. Deveny executed a note for $3,750 to the guardian as part of the purchase price, a vendor's lien being retained. This alone would not have estopped appellants and they would still be entitled to claim their homestead rights unless it is shown that the guardian did not have notice of the alleged simulated transaction.

 The guardian testified that he had no information or knowledge that it was not a bona fide sale; that he made an investigation of the matter by inquiring from several people and that he did not learn that the deed was not what it purported to be; that Uptmor and Deveny represented to him that it was a sale; that he advanced the money in the belief that the Uptmors had made a straight out sale of their property. Uptmor testified that he did not think the guardian knew that it was a pretended sale. The jury found that at the time the guardian advanced the money he did not know that the sale was a pretended one. The jury also found that the guardian's attorney who handled the matter for said guardian had neither information nor knowledge that the arrangement between the Uptmors and Deveny was a pretended sale of their homestead for the purpose of enabling Uptmor to raise money. Such findings, when based upon sufficient evidence, constitute the guardian an innocent purchaser for value without any notice of the vice in the transaction between appellants and Deveny. In a situation like this, where one or the other must be deprived of some right that he would otherwise be entitled to, the law is well settled that the one who wilfully or knowingly brings about a situation and withholds from an innocent party facts which it is his duty to disclose and if his failure to do so causes such innocent party to act to his prejudice, he must suffer the consequence of his own wrongful act. In other words, one who has acted in good faith, without notice, and in reliance upon the conduct and representation of another, whereby his rights have been prejudiced as a result thereof, the law gives such party preference over the one who has, through some undisclosed scheme, obtained money or some other right from the other by withholding facts that, in the light of the principles of equity and good conscience, it was his duty to divulge. So in this case we look to the facts to determine whose rights are paramount, the appellants, who made an undisclosed simulated sale of their homestead for the purpose of borrowing money under the circumstances heretofore related, or the N. C. M., whose money was obtained through such scheme and without notice to his guardian of its invalidity but in the belief on the part of his guardian that it was a bona fide sale. We are of the opinion that under such a situation the claim of the N. C. M. should have priority over the homestead equities of the appellants. Heidenheimer Bros. v. Stewart, 65 Tex. 321; Garrett v. Katz, Tex.Civ.App., 23 S. W.2d 436; Quillin v. State Trust Co., Tex. Civ.App., 50 S.W.2d 879; Bernstein v. Hibbs Tex.Civ.App., 284 S.W. 234; Sanger v. Calloway Tex.Com.App., 61 S.W.2d 988; Tex.Jur., Vol. 17, p. 136.

 Appellants contend that they did not have notice of the cross-action filed on January 4, 1941, and did not appear in person nor by counsel, and therefore the judgment should be set aside. In this connection, the jury found that the appellant's attorney was authorized to represent Uptmor on said occasion and that he had requested that the judgment of foreclosure be entered, and there is ample evidence in the record to support such finding. Mrs. Uptmor was placed upon the stand as a witness and she testified in detail concerning the facts surrounding the transaction between them and Deveny and the execution of the deed, but she did not deny that she acquiesced in the entry of said judgment and in her entire testimony she did not mention the cross-action or the judgment. In order for appellants to set aside the judgment in question which was entered at a previous term of court, they had the burden of not only alleging and

proving that the judgment was entered unmixed by any negligence upon their part, and that they did not learn of it before the expiration of the term at which it was rendered in sufficient time that, in the exercise of ordinary care, they could have moved for a new trial or appealed therefrom, but they were charged with the further burden of alleging and proving a meritorious defense. This last requirement the appellants were unable to meet. The jury having found facts which constitute the guardian an innocent taker of the note for value and without notice of the simulated transaction, these findings give the guardian's claim priority over the homestead rights of the appellants, and in view of such findings they are estopped to assert that the claim of the guardian is invalid by reason of their homestead rights. Being deprived of this defense, they had no other. Brown et al. v. Clippinger, 113 Tex. 364, 256 S.W. 254; Humphrey et al. v. Harrell et al., Tex.Com.App., 29 S.W.2d 963; Shaw, Banking Com'r. v. Etheridge, Tex.Civ.App., 15 S.W.2d 722; Tex.Jur., Vol. 25, p. 666, Sec. 241.

 Since this claim had preference over the homestead rights of Mrs. Uptmor and she had no defense thereto, under such circumstances the law confers upon the husband the power to adjust the equities of the parties by renewal lien, mortgage, sale in part, or even by complete renunciation of the property so burdened; and as long as he acts in good faith and not in fraud of the rights of his wife, his acts are binding upon her even if she does not join in the instrument executed by her husband in making such adjustments of existing liens or consent thereto. So we are of the opinion that Will Uptmor, the husband, had the power to agree to the entering of the judgment foreclosing the lien against the homestead in an effort to adjust the equities existing between appellants and the guardian, as long as he was acting in good faith. It was his duty to save the homestead if he could. That duty is placed upon him by law, and it appears from the facts existing at that time the only way he could have saved the homestead from the contemplated sale was for the court to enter a judgment establishing said lien as a valid one against said property. There is no contention made here that when he requested not only his attorney but the attorney representing the guardian to have the judgment entered, that he was not acting in good faith with his wife in respect to her rights in the homestead, and the mere fact that his re-financing deal did not materialize as he expected would be no excuse for setting aside the judgment solemnly entered at his request. White v. Shepperd, 16 Tex. 163; Brooks v. Young, 60 Tex. 32; Clements v. Lacy, 51 Tex. 150; Dickson et al. v. Allen, Tex.Civ. App., 24 S.W. 661; Machicek et ux. v. Barcak, 141 Tex. 165, 170 S.W.2d 715; Evans v. Marlow et al., Tex.Civ.App., 149 S.W. 347; Hill et al. v. Wright et ux., Tex.Civ.App., 30 S.W.2d 812; Dyess et ux. v. Hansen, Tex.Civ.App., 151 S.W.2d 904; Anderson et al. v. Thomas et al., Tex. Civ.App., 50 S.W.2d 844, writ granted.

 Appellants contend that D. T. Janes, at the time he purchased the property at foreclosure sale, had knowledge that the transaction between appellants and Deveny was a simulated one for the purpose of placing a lien upon their homestead, and by reason of such knowledge he did not acquire any title or lien in or to said land nor other rights in the same, but occupied the position of a mere volunteer. The guardian, without any notice of the undisclosed equities of the appellants, advanced the money of his ward in the belief that it was a bona fide transaction and that he was getting a valid lien. He thereby became an innocent holder and his rights took priority over any equities that the appellants might have possessed in the homestead. We see no reason why an innocent holder should be penalized by being deprived of a purchaser simply upon the ground that such purchaser had notice of the vice in the transaction at the time he purchased said property from one who had no notice whatsoever of the same. So we are of the opinion that the fact that Janes, who purchased the property, had notice at the time he purchased same that the sale was only a pretended one and made for the purpose of permitting appellants to borrow money and give as

security a lien on their homestead, would not of itself vitiate the sale or in any way jeopardize the rights of the guardian or Janes, who purchased the property at foreclosure sale.

Appellants say the court committed reversible error in refusing to give their special issue No. 15, which was as follows: "At or about or during the transaction herein involved, and prior to the time the matter was finally closed, did or did not the guardian's attorney have information or knowledge of such information or facts as should have put a reasonably prudent man, in the exercise of ordinary care, upon notice that the transaction between Will Uptmor and Deveny was, in substance, a mortgage upon or a pretended sale of the Uptmor homestead, and which notice, if any, had been pursued would have led him to learn that it was a mortgage upon or a pretended sale of their home, and not a real sale of it?"

Rule 279, Texas Rules of Civil Procedure, provides, in part: "Failure to submit an issue shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment; provided, however, that objection to such failure shall suffice in such respect if the issue is one relied upon by the opposing party."

The late Chief Justice Alexander, in construing the foregoing provision of said rule, had this to say: "This does not mean that it must be absolutely correct, nor does it mean that one that is merely sufficient to call the matter to the attention of the court will suffice. It means one that in substance and in the main is correct, and that is not affirmatively incorrect."

Vernon's T.R.C.P., p. 295. The appellants filed no objection to the court's main charge on the ground that the court had failed to submit this phase of the case to the jury. It can readily be observed that the foregoing requested issue is affirmatively incorrect, in that it is duplicitous and multifarious. The court was not in error in refusing to give it. Another reason why it was not error for the court to refuse to submit said issue is that appellants tendered a series of issues Nos. 6, 7 and 8, and at their request the court submitted them. Following issue No. 6 and preceding issue No. 7 the following instruction was given: "If you have answered the foregoing issue 'No' (referring to special issue No. 6) then you need not answer the following issues Nos. 7 and 8. If you have answered such issue 'Yes', then answer such issue." The jury failed to answer their requested issue No. 6 in the affirmative, and as they were instructed to answer issue No. 8 in the event they had answered issue No. 6 "Yes", the jury made no answer to their requested issue No. 8, which was: "Do you find from the preponderance of the evidence that the attorney for said guardian had knowledge, or information such as would put a reasonably prudent man upon inquiry, and if pursued would have put him upon notice that said sale from the Uptmors to Deveny was only a pretended sale or mortgage?" Where the court has already submitted an issue, even though it is submitted conditionally upon the way a preceding issue is to be answered, if it is given at the request of a party or without his objection, he cannot require the court to submit the identical issue again, although such issue does not contain such condition. We are of the opinion that appellants, in requesting the court to give such issue the answer to which was based conditionally upon an affirmative answer to special issue No. 6, waived any right they had to complain of the court's refusal to submit their requested special issue No. 15. Bankers Standard Life Ins. Co. v. Atwood et al., Tex.Civ.App., 205 S.W.2d 74.

We have considered the other assignments of appellants and they are hereby overruled.

Finding no reversible error in the proceedings below, the judgment of the trial court is affirmed.