### E. E. AND V. A. CHASE v. JOHN F. SWAYNE.

#### No. 281.

**1. Homestead—Insolvent Debtor.**

The object of the constitutional provision exempting homesteads is to protect the homes of insolvent debtors from forced sale. The debtor may apply his funds to improvements upon his homestead, and no limit in their value is imposed. Such investment, although large, will not constitute a fraud against creditors for which they may obtain relief........................... 222

**2. Insurance on Homestead.**

Money due from an insurance company upon a policy of insurance issued upon the homestead is not subject to garnishment at the suit of a creditor. 222

**3. Same—Case Approved.**

Cameron v. Fay, 55 Texas, 58, adhered to as to exemption of insurance money upon the homestead ............................................. 222

**4. Same.**

The money due upon an insurance policy upon a house represents to the owner of the property the house lost; and the destruction of the house by fire is an involuntary conversion of the house into money, as fully as if it had been sold under execution or deed of trust ......................... 224

**5. Value of Improvements Upon Homestead.**

We must apply to the money arising from a policy of insurance the same rule that the Constitution applies to the improvements; which is, that there is no limitation upon their value, and the courts have no power to say that only a reasonable portion of such fund shall be exempt. It is all exempt when derived from a policy on the homestead improvements.............. 226

ERROR to Court of Civil Appeals for Second District, in an appeal from Tarrant County.

*John W. Wray,* for plaintiffs in error.—1. The court erred in the interpretation and construction of the case of Cameron v. Fay, 55 Texas, 58, in that the logical and legal effect of said decision exempting the avails of the insurance policy laid on the homestead of the Fays is to exempt to petitioners the avails of the insurance policies laid on their homestead, irrespective of the amount of the insurance so laid and avails accruing therefrom and arising by reason of the involuntary destruction of their homestead.

2. The court erred in failing to properly interpret section 51 of the Constitution of Texas, which exempts a lot or lots in a city, town, or village which does not exceed $5000 in value at the time of their

designation as a homestead, without reference to the value of any improvements thereon, when the same is used for the purposes of a home; in that the necessary and logical interpretation of said provision and section 50 when construed in connection with the decision of Cameron v. Fay, is, that there may be no limit upon the insurance which petitioners may recover for the loss of their homestead, and that the avails of the insurance policies laid on the homestead, when involuntarily destroyed, are exempt to petitioners to their fullest limit.    Pratt v. Burr, 5 Biss., 36;   Wood v. Wheeler, 11 Texas, 122;   Willis v. Mathers, 46 Texas, 479;   Cooney v. Cooney, 65 Barb., 525;   Wyman v. Wyman, 23 N. Y., 258;   White v. Fulghan, 10 S. W. Rep., 503;   Reynolds v. Haines, 83 Iowa, 343;   Burnham v. Davitt, 5 S. W. Rep.,193;   Hunter v. Wooldert, 55 Texas, 433;   Houghton v. Lee, 50 Cal., 101; North v. Shearn, 15 Texas, 175.

3.   The court erred in deciding, that where an insolvent husband erects improvements of great value on real estate situate in a city, town, or village, which, at the time of its designation as a homestead, was of less value than $5000, and that when the improvements erected thereon are being occupied as a homestead, are destroyed by fire, but that prior thereto policies of insurance were laid thereon by one of the constituents of the family, that the intent with which the husband erects the improvements can be inquired into at all by his general creditors, for the purpose of determining whether or not, in the judicial discretion of a trial court or a traverse jury, the avails of the insurance policies arising from the loss are greater than the court and such jury should conclude were reasonably sufficient to provide the family with improvements on the real estate, in place of those destroyed, fitted to their condition in life.    Cameron v. Gebhard, 85 Texas, 616;   Trotter v. Dobbs, 38 Miss., 198;   Erwin v. Lewis, 50 Miss., 363;   Hawthorne v. Smith, 3 Nev., 260;   Meigs v. Dribble, 73 Mich., 101; Tucker v. Drake, 11 Allen, 145;   McPhee v. O'Rourke, 10 Colo., 301;   Fitzell v. Leaky, 72 Cal., 447;   Clipperly v. Rhodes, 53 Ill., 347;   Jacoby v. Distilling Co., 41 Minn., 227;   Long v. Murphy, 27 Kan., 375;   Tootle v. Stine, 31 Kan., 66;   Rose v. Sharpless, 33 Gratt., 153;   Gilleland v. Rhoads, 34 Pa. St., 187;   Strouse v. Becker, 38 Pa. St., 190;   Cobbs v. Coleman, 14 Texas, 594;   Anderson v. McKay, 30 Texas, 186;   Noyes v. Brown, 75 Texas, 458.

*Samuels & Hendricks,* for defendant in error.—1.   The plea of intervention and the answer of garnishee, the Phœnix Assurance Company, show that the fund impounded, or the sum owing intervenor E. E. Chase by said defendant garnishee, was on account of a policy of fire insurance, whereby said garnishee had agreed and undertook to indemnify the said Chase from loss by fire to the amount of said policy; and that said contract of indemnity was personal to the said Chase, and did not by its provisions insure said property as a homestead, and the proceeds of said policy were not the representative of said homestead.    Const. 1876, art. 16, sec. 51; 1 Sayles' Civ. Stats., art. 2336; 1

May on Ins., 3 ed., p. 2, sec. 1; Id., p. 7, sec. 6; Kirby v. Giddings & Giddings, 75 Texas, 681; Cameron v. Fay, 55 Texas, 58; Houghton v. Lee, 50 Cal., 101; Cooney v. Cooney, 65 Barb. (N. Y.), 524; Smith v. Ratcliffe, 66 Miss., 683; 14 Am. St. Rep., 606; Wooster v. Page, 54 N. H., 125; 20 Am. Rep., 128; Moniea v. Ins. Co., 12 Brad., 240.

2. The Constitution and statute limit the exemption of the homestead to the real estate and the improvements thereon situated, and make no provision for exempting the proceeds of an insurance policy, effected upon the homestead, or proceeds of a voluntary sale of the homestead; and there being no doubtful language in the law of homestead exemptions to construe, no room exists for the artificial interpretation extending the immunity to objects other than those embraced in the law. 23 Am. and Eng. Encyc. of Law, 411, and cases cited in notes 3, 4; Id., 412, 413, and note 1; Campbell v. Cook, 26 S. W. Rep., 488; Turner v. Cross and Eddy, 83 Texas, 223, 224; 2 Sayles' Civ. Stats., art. 3138; United States v. Fisher, 2 Cranch (U. S.), 399; Endlich on Interp. of Stat., secs. 18–20, 323–325; Suth. on Stat. Con., secs. 413–416; Cool. Const. Lim., 5 ed., *54, 55, and pp. 67, 68; also *57–59, and pp. 71, 72.

3. The court erred in sustaining the general demurrer of intervenors, E. E. and V. A. Chase, to all that part of plaintiff's supplemental petition following the general and special demurrer, for the following reason: In that part of the supplemental petition it is alleged that the intervenor E. E. Chase, husband of V. A. Chase, in fraud of his creditors, and this particular creditor, in the year 1890, and in part during the year 1891, built a residence and improved lots, expending therefor the sum of $125,000, and at said time said Chase owed to said plaintiff the debt herein claimed, and was indebted to various persons in the sum of $300,000, and that when the said Chase began the construction of said costly residence he contemplated insolvency, and a short time thereafter was hopelessly and notoriously insolvent, and that the application of said moneys invested in the homestead, and in the improvement of said lots claimed as a homestead by intervenors, was for the purpose of hindering and delaying his creditors, including this plaintiff; and that the said Chase should not be allowed to collect the $60,000 insurance money resulting from the policies of insurance. Smith v. Gore, 23 Kan., 349; Endlich on Interp. of Stat., secs. 320–325; 23 Am. and Eng. Encyc. of Law, 409–411, and cases cited.

*Harry G. Hendricks* filed an argument for defendant in error.

BROWN, ASSOCIATE JUSTICE.—Plaintiffs in error were husband and wife, and occupied and owned a homestead in the city of Fort Worth, upon which was their residence, and which they insured in various insurance companies to the amount of $60,000. The property was destroyed by fire. One of the policies on Chase's house was issued by the Phœnix Insurance Company. Chase was indebted to John F.

Swayne in the sum of $22,000, upon which judgment had been rendered. Swayne sued out a writ of garnishment against the Phœnix Insurance Company, which answered, setting up the facts, admitting the indebtedness to Chase upon the policy, and stating that it was for insurance upon his homestead. Chase and wife intervened, claiming that the money due upon the policy was exempt, because it was the proceeds of a policy of insurance upon their homestead. Swayne replied to the plea of intervention, that Chase, being indebted in the sum of $300,000, and being insolvent, and in contemplation of his insolvency, with the intent to defraud his creditors, and especially the plaintiff, invested in the improvements upon his homestead, that which was insured, and for which the money was claimed from the insurance company, the sum of $125,000, with the purpose of withdrawing and abstracting from his assets an unnecessary and unreasonable amount, thereby placing the same beyond the reach of his creditors, especially the plaintiff. That Chase had procured policies of insurance upon his residence from various insurance companies to the aggregate amount of $60,000, and that after paying plaintiff's debt there would remain $35,000 or $40,000, a sum more than sufficient to erect a dwelling in the place of the one destroyed, the sum of $5000 being alleged to be a reasonable amount for that purpose.

To this supplemental petition the District Court sustained a demurrer, and upon trial gave judgment for the intervenors.

The Court of Civil Appeals reversed the judgment of the District Court, holding that all of the insurance money over and above a reasonable sum for rebuilding the residence should be subjected to the payment of the debts of the intervenors.

The following questions arise upon the presentation of this case:

1. Was the investment made in the house for which the insurance is claimed deprived of the exemption under the Constitution, by the alleged fraud of the plaintiff in error E. E. Chase?

2. If the property itself was exempt from forced sale under the Constitution, is the insurance money derived from the policy thereon likewise exempt under the Constitution?

3. Can the court limit the amount of the insurance money to which the plaintiffs in error are entitled as being exempt, to what may be considered a reasonable sum to be invested in another residence?

The first question is definitely settled against the contention of the defendant in error by the case of North v. Shearn, 15 Texas, 175, wherein the plaintiff sought to subject the homestead of the defendant, upon the ground that when he contracted the debt he was a single man, and set about erecting the homestead improvement with the material for which he contracted the debt, with a knowledge of his inability to pay the debt, and that he married and acquired his homestead in fraud of his creditors. The court held in that case that the evidence was not admissible. That case was stronger in favor of the creditor than the present case, in this, that the debt was contracted for the material

with which the improvements were made, and when sold to defendant he was a single man. In this case, it is not claimed that the money invested by Chase was acquired from plaintiff, or that it was acquired from any one in such manner as to show that it was the intent at the time to put it beyond the reach of creditors. Chase was at the time a married man, and all parties who dealt with him must take notice of the law upon the subject of exemptions. Meigs v. Dibble, 73 Mich., 101.

The allegations of the supplemental petition amount in substance to a charge that Chase, being largely indebted, insolvent, and the head of a family, invested in his homestead improvements a large amount of his funds, with the intent to defraud his creditors by placing the same beyond the reach of the law. The proposition, in effect, is, that an insolvent debtor can not invest his money or property in a homestead by which it will be protected from the payment of his debts. The object of the constitutional provision is to protect the homes of insolvent debtors from forced sale, and if the contention of plaintiff be correct, only such as become insolvent after the investment is made can be protected. While it is true that the amount alleged to have been invested in the homestead by Chase is large, the Constitution places no limit on the value of such improvements which are permitted to be made. The amount invested does not change the principle involved, for if it be a fraud to invest a large amount for such purposes and under such circumstances, it is equally a fraud to so invest for like purposes a smaller amount.

There might be a state of facts under which such investment would not be protected, as in the case of Shepherd v. White, 11 Texas, 346, where the property purchased as a homestead was paid for by another, so that a resulting trust existed, or if the property invested had been acquired by fraud, so that the title thereto did not pass by the sale. But the allegations in the supplemental petition present no such case. The demurrer was properly sustained to the supplemental petition.

The second question has likewise been decided in favor of the plaintiffs in error, in the case of Cameron v. Fay, 55 Texas, 58, in which it was held, that the money due from an insurance company upon a policy of insurance issued upon the homestead is not subject to garnishment at the suit of a creditor. That decision is vigorously attacked and severely criticised, but whatever may be said of it, an examination of the authorities will show that it is abundantly supported by the decisions of the ablest courts in the Union, and opposed by but few. The following cases support the doctrine of this court upon the question at issue: Berheim v. Davitt, 5 S. W. Rep. (Ky.), 193; Mulliken v. Winter, 2 Duval (Ky.), 257; Reynolds v. Haynes, 49 N. W. Rep. (Iowa), 851; Houghton v. Lee, 50 Cal., 101; Cooney v. Cooney, 65 Barb., 524; Tillotson v. Walcott, 48 N. Y., 188; Wyman v. Wyman, 26 N. Y., 253; Leavitt v. Metcalf, 2 Vt., 342; Stebbins v. Peeler, 29 Vt., 289; Culbert-

son v. Cox, 29 Minn., 309; Probst v. Scott, 31 Ark., 652; Mudge v. Lanning, 68 Iowa, 641; Kaiser v. Seaton, 62 Iowa, 463.

We have been able to find no case holding the contrary doctrine except those cited by the Court of Civil Appeals and counsel for the defendants in error, which are, Monniea v. German Insurance Company, 12 Bradwell, 240, decided by the appellate court of Illinois, upon a statute which in terms excluded from exemption debts due from corporations; Wooster v. Page, 54 New Hampshire, 125; Smith v. Ratcliff, 66 Mississippi, 683. The last two are in point, and directly opposed to the majority of the courts upon the question.

There is in the case of Cameron v. Fay an apparent inconsistency in holding that Cameron, who had a materialman's lien upon the buildings insured and the lots upon which they stood, had no right to have the proceeds of the insurance policy upon those buildings applied to the discharge of his lien, and at the same time holding, that the proceeds of the policy were so far impressed with the character of the property insured as to exempt the money due thereon from the payment of the debts of the policy holder, because the property insured was exempt. This inconsistency upon the same questions exists in the decisions of many other States, but it is the more obvious in that case, because both questions were decided in the same case.

In disposing of the rights of the lienholder in Cameron v. Fay, the court said: "The policy is strictly a personal contract. It does not attach to the mortgage or the realty." This is a quotation from Jones on Mortgages, and is a succinct statement of the reasoning of the cases upon that question. We do not intend to enter upon a discussion of that proposition, for it is not involved in this case. It does not necessarily follow, however, that because a court adopts a rule established by a line of decisions upon a given question, that it must therefore carry that rule to its logical results by applying it to all cases upon the same character of contracts, where the parties occupy different relations to the subject and to each other. An instance of this occurs in the adjudications of the courts upon insurance policies, where the question involved is whether the heir or administrator is entitled to the proceeds of a policy upon a house. In those States in which the administrator takes the personal property and the heir takes the land of the intestate, the courts hold, that upon the death of the holder of a policy of insurance on a house situate on land belonging to him, if by the policy the right to the money passes to the heir or administrator upon such death, the person to whom the land descends or is devised takes the policy of insurance. In other words, the policy passes with the land to whomsoever the title to the land passes. Culbertson v. Cox, 29 Minn., 309; Wyman v. Wyman, 26 N. Y., 253.

If the policy were considered strictly a personal contract, and did not attach to the realty, then the proceeds must in such case be assets in the hands of the administrator.

In this State it is held, that when a sale of land is made and a vendor's lien is reserved in the deed or note, or a mortgage given, the paramount title remains with the vendor; the deed is but an executory contract, which, in case of nonpayment by the vendee, the vendor may rescind and recover the land. However, when under the same character of deed the vendor sues to recover the purchase money, and the vendee seeks to set up as a defense a failure of title, the deed is held to be an executed contract, and the rules applicable to such instruments are applied to the defense. Lanier v. Faust, 81 Texas, 189; Ogburn v. Whitlow, 80 Texas, 239. We cite these instances merely to show that Cameron v. Fay is not singular in the application of different rules to the policies of insurance in determining the rights of the same parties to the same money, when occupying different relations to each other and to the subject of litigation.

In Smith v. Ratcliff, supra, the Supreme Court of Mississippi ridiculed the idea that the proceeds of a policy represents the house upon which the insurance was placed, but that learned court failed to give any reasons why it did not so represent the house, nor did it state what it did represent.

"To represent" means "to stand in the place of." What does the insurance money represent to the payee of the policy?

No one is permitted to insure property in which he has no interest, and in case the title is terminated the policy becomes void, because there is no interest to support it. The validity of a policy of insurance is made to depend upon the correctness of answers as to the value, title, locality, and other conditions, and the amount to be paid is regulated by and based upon the value of the property insured. The purpose of taking out the insurance is to enable the owner to restore the thing insured, in case of loss, or to reimburse him for the loss of it. The house in this case was the subject of the insurance, the agreed proportion of its value was the measure of damages to be paid upon its loss, the policy was dependent upon its existence, and payable upon its destruction. The proceeds stand to the owner in the place of the property lost; it is the value of the house paid by the insurance company, not because it acquires the property, but because it agreed to pay so much for the house if destroyed by fire.

If the house of Chase had been set on fire by sparks from a locomotive operated upon a railroad, under such circumstances as would make the railroad company liable, the value of the house would be the measure of damages—it would be compensation for the loss; in other words, indemnity for the injury, and such damages would be exempt from garnishment for the debts of the owner. Mudge v. Lanning, 68 Iowa, 641. If there had been a railroad in course of construction through that city, and the house of plaintiff in error had stood in the line of that road, it might have been condemned and torn down or removed. In that case, the value of the house would be the measure of damages, and would be exempt from the power of courts to apply it to the pay-

ment of debts of the owner. Kaiser v. Seaton, 62 Iowa, 463. In each of these cases the damages takes the place of the house, represents it to the owner, and it is not apparent to us that there is any material difference between money paid in these cases and that paid upon an insurance policy.

We think that the money due upon an insurance policy upon a house represents to the owner of the property the house lost, and that the destruction of the house by fire is an involuntary conversion of the house into money, as fully as if it had been sold under execution or deed of trust.

Can the courts limit the amount of the money derived from an insurance policy upon the homestead improvements that may be protected from the debts of the owner to a sum reasonably sufficient to build a house for the family to live in, and subject the remainder to the payment of debts? This is the main question in this case.

It is claimed by counsel for defendant in error, that the exemption of the money involved does not arise out of the Constitution, but rests upon the decision of Cameron v. Fay, in which an equitable construction, as it is called, was placed upon the Constitution, thereby creating an exemption which did not arise out of its language. If this were correct, that case should be overruled. The decision of a court contrary to the Constitution of the State can have no validity; it is the exercise of unauthorized power on the part of the court.

There is a marked distinction between liberal construction of Constitutions and statutes, by which courts, from the language used, the subject matter and purposes of those framing them, find out their true meaning, and the act of a court in engrafting upon a law or Constitution something that has been omitted, which the court believes ought to have been embraced. The former is a legitimate and recognized rule of construction, while the latter is *judicial legislation*, forbidden by article 2, section 1, of the Constitution of the State, by which the powers of the government are distributed to three departments, the legislative, executive, and judicial, forbidding any one to exercise the powers conferred upon another. The protection claimed for insurance money upon a homestead does not depend upon the case of Cameron v. Fay, but upon the Constitution, the meaning and intent of which the court, in Cameron v. Fay, by fair construction ascertained to include the proceeds of such policies.

The Court of Civil Appeals followed the case of Cameron v. Fay so far as to hold, that there should be exempt to the plaintiffs in error a portion of the insurance money; that is, a reasonable sum with which to build a residence for the family. For this limitation upon the amount, the Court of Civil Appeals finds warrant in the case of Cameron v. Fay, wherein it is said, that the money would be protected from appropriation to payment of debts by judicial process, for a reasonable time. Upon the same ground, defendant in error seeks to sustain that ruling, and asks this court to hold that the insurance

money over and above a sum reasonably sufficient to build another home shall be declared subject to his debt. In limiting the time within which the exemption should continue, this court applied to the same subject in its new form the proviso of section 51, article 16, of the Constitution, "that the same shall be used for the purposes of a home." The property insured being once a homestead, would not be exempt after it ceased to be used as a home, that is, if abandoned for such uses; and applying the same principle to the proceeds of the policy upon such home, the money would cease to be protected after the lapse of such time as showed an intention to abandon its use for such purpose.

When a court ascertains that the meaning and intent of a law embraces that which is not expressed in the language, this becomes a part of the law, the same as if it had been so written. Higgins v. Rinker, 47 Texas, 401; United States v. Freeman, 3 How., 565; Riddick v. Walsh, 15 Mo., 519. In other words, we are to treat the exemption of the insurance money as if it had been named in the Constitution. We must therefore determine the question as to the right to limit the amount to be protected, by applying the rule expressed in the Constitution for homestead improvements.

On the 26th day of January, 1839, an act was passed by the Congress of the Republic of Texas exempting to every head of a family, free from forced sale, fifty acres of land in the country, or one lot in a town, including the improvements, not to exceed in value $500. Laws 1839, p. 125. By the Constitution of the State, adopted in 1845, the homestead was extended to 200 acres of land in the country, or a lot or lots in town or city not to exceed $2000 in value. This was construed to include the improvements made upon the lots, and the excess in value over that sum was subject to debts. Wood v. Wheeler, 7 Texas, 13; North v. Shearn, 15 Texas, 174; Williams v. Jenkins, 25 Texas, 279. In Wood v. Wheeler, Chief Justice Hemphill said: "It is in my view to be regretted that any limitation as to value was placed on the homestead exemption. Property in value is subject to great mutations; at one period depreciated to the lowest, at another inflated to the highest degree. Homesteads on town lots procured for a few hundred dollars may, in a short time and without additional improvements, from the increased value of the property, exceed the constitutional limit of exemption. If from this accretion in its appraised value it be subject to forced sale, and the portion of the proceeds paid the owner be invested in another homestead, this again in a short period may augment in value, and the family be a second time expelled from their home."

The difficulties here pointed out were met by the Legislature in 1860, in the following short act: "That the homestead in a town or city, exempt from forced sale, is hereby declared to be the lot or lots occupied or destined as a family residence, not to exceed in valuation $2000 at the time of their destination as a homestead; nor shall the subse-

quent increase in value of the homestead, by reason of improvements or otherwise, subject the homestead to forced sale.'' Pasch. Dig. art. 3928. The Constitution of 1866 contained the same provisions upon this subject as that of 1845, and in 1866 the Legislature passed an act containing the same provisions as the law of 1860, quoted above, in order to guard against such construction as had been placed upon the former Constitution by the courts. The provisions of the Constitution of 1869 were substantially the same as those of section 51, article 16, of the present Constitution, which places the value on the lot or lots at the time of their designation as a home, and excludes from such valuation all improvements thereon.

This short review of the history of homestead exemptions in this State shows, that each and every decision of the courts which placed a limit or restriction upon the homestead has been met with legislative enactments and constitutional provisions overruling the decisions of the courts, enlarging the value of the homestead exemption, and placing in the Constitution safeguards against the contingencies of future judicial construction.

We must, as before stated, apply to the money arising from the policy of insurance the same rule that the Constitution applies to the improvements, which is, that there is no limitation upon their value, and the courts of this State have no power to say that only a reasonable portion of such a fund shall be exempt; it is all exempt when derived from a policy on the homestead improvements.

It is said that the amount involved is a large sum for an insolvent debtor to be permitted to withhold from his creditors for the purpose of building a residence for his family. The amount invested in the house, according to the allegations, was larger, and yet the Constitution of the State exempted the house. If there be injustice in the matter, it arises out of the constitutional provision exempting the house of such value, for there is no wrong done in protecting from the debt of defendant in error the money arising out of the destruction of that to which he had no right. Whatever judges of courts may think of the policy of exempting homestead improvements of great value from the payment of the debts of the owner, the policy of the State is too unmistakably settled, by the specific changes made from time to time in the Constitution, for any court to assume to give a new policy to the State upon this question. The people of Texas made the Constitution, and they have a right to change it, if it is found to work harshly and unjustly; but courts have no choice but to enforce and obey its mandates.

The Court of Civil Appeals erred in reversing the judgment of the District Court and remanding this cause, for which error the judgment of the Court of Civil Appeals is reversed, and the judgment of the District Court is affirmed.

*Judgment of Court of Appeals reversed.*
*Judgment of District Court affirmed.*

Delivered May 6, 1895.