In The Matter of Armand J. LAPOINTE, Ellen B. Lapointe, Debtors.

Armand J. LAPOINTE and Ellen B. Lapointe, Movants,

v.

SNELLING & SNELLING, INC., Advance Processing Systems, Inc., Respondents.

Bankruptcy No. 2–92–03470.

United States Bankruptcy Court, D. Connecticut.

Jan. 25, 1993.

Robert Shluger, Shluger & Shluger, Hartford, CT, for movant-debtors.

Shelley R. Sadin, Zeldes, Needle & Cooper, P.C., Bridgeport, CT, for respondents-creditors.

## MEMORANDUM OF DECISION AND ORDER ON MOTION TO AVOID JUDICIAL LIEN

ROBERT L. KRECHEVSKY, Chief Judge.

## I.

### ISSUE

Bankruptcy Code § 522(d)(1) permits a debtor, who elects the federal exemptions, to exempt an interest "not to exceed $7,500.00 in value" in the debtor's residence. Section 522(f)(1) provides that a "debtor may avoid the fixing of a [judicial] lien on an interest of the debtor in property to the extent that such lien impairs an

exemption to which the debtor would have been entitled."

The issue before the court is whether the language of § 522(f)(1) authorizes two joint debtors, without equity in their residence above prior consensual liens, to avoid two creditors' single judicial lien in full, or only to the extent of $15,000.00 ($7,500.00 per debtor). The matter has been submitted upon the pleadings and a stipulation of facts.

## II.

### BACKGROUND

The debtors, Armand J. LaPointe and Ellen B. LaPointe, filed a joint chapter 7 case on September 1, 1992. In their amended schedules the debtors each elected the federal exemptions—*see* § 522(b)(1) and (d)—and claimed their interest in their jointly-held residence, 37 Ash Court, Middletown, Connecticut, as exempt in the combined value of $15,000.00.

Snelling & Snelling, Inc. and Advanced Processing Systems, Inc. (the creditors) hold a judicial lien on the residence, filed on September 4, 1991, in the amount of $16,899.39, plus interest of 10% per annum from the date of the lien filing. The creditors and the debtors stipulated, that as of the date of the debtor's bankruptcy petition, the fair market value of the residence was $221,000.00, and that three mortgages on the residence, recorded prior to the judicial lien, represent a combined mortgage debt of $291,000.00.

The debtors filed a motion pursuant to § 522(f) and Fed.R.Bankr.P. 4003(d)[1] seeking to avoid the creditors' lien in full, alleging that "[t]he difference between the value of the property and the mortgage encumbrances is a figure less than zero." The creditors filed an objection to the motion contending "[a]ny lien avoidance must be limited to the amount of the allowable exemption."[2] The creditors' lien would

---

1. *Fed.R.Bankr.P. 4003(d).* "A proceeding by the debtor to avoid a lien or other transfer of property exempt under § 522(f) of the Code shall be by motion in accordance with Rule 9014."

2. The creditors concede that the debtors have an interest in their residence to exempt, despite the debtors' present lack of any equity, and that the creditors' lien impairs that exemption. *See In re Brown,* 734 F.2d 119, 125 (2d Cir.1984) ("[T]he

thereby remain unavoided for the balance of their claim—*e.g.*, $1,899.39 plus accrued and accruing interest.

Which position is adopted in a § 522(f)(1) lien avoidance proceeding has significant impact on the parties. If the lien is completely avoided, any equity in the residence, in excess of the exemption amount, which the debtors create through their postpetition efforts goes to the benefit of the debtors. If the lien remains in place securing the balance of the creditors' claim, the creditors will receive the benefit of the debtors' postpetition efforts. *In re Cerniglia*, 137 B.R. 722, 724 (Bankr.S.D.Ill. 1992).

### III.

### DISCUSSION

The decisional authority to date has become pretty much evenly divided on whether or not to permit lien avoidance in whole when there is no equity in the exempted property. Those courts that allow full lien avoidance rely on an asserted Congressional intention to protect the debtor's fresh start[3] in construing § 522(f)(1); those that don't generally rely on the plain language doctrine of statutory construction.

The legislative history underlying § 522(f)(1) is limited to the following statement:

> Subsection (f) protects the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. The debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien.... The avoidance power is independent of any waiver of exemption.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess., 362 (1977); S.Rep. No. 95–989, 95th Cong.,

2d Sess. 76 (1978); *U.S.Code Cong. & Admin.News* 1978, pp. 5787, 6318.

The courts which construe § 522(f)(1) as permitting complete avoidance of undercollateralized liens rely on this Congressional statement as underscoring the fresh start purpose of bankruptcy legislation. They note that consumer debtors who receive a discharge can thereafter acquire property which will not be subject to claims of prepetition creditors. In matters like the one under consideration, it will only be the debtors' postpetition efforts which may pay down mortgage balances, maintain the property and make improvements to the property. If courts construe § 522(f)(1) to allow undercollateralized judicial liens to remain on exempted property, debtors' postpetition efforts would benefit the prepetition creditor, not the debtor. *See In re Galvan*, 110 B.R. 446, 449–451 (9th Cir. BPA 1990) (The intent of § 522(f) is to "leave enough property in the hands of the debtor to insure a 'fresh start' after discharge."; that "unsecured liens allowed to remain on the debtor's property will impair a debtor's fresh start by partaking in postpetition property acquisitions and equity build up."); *In re Braddon*, 57 B.R. 677, 679 (Bankr.W.D.N.Y.1986) (Allowing the judicial lien to remain, "would frustrate the purpose of the fresh start by not providing the debtors with an accurate determination as to the finality of their debts and would hinder the debtors' ability to amass future equity."). *Accord In re Berrong*, 53 B.R. 640, 645 (Bankr.D.Colo.1985); *Morelock v. All Phase Elect. Supply Co. (In re Morelock)*, 47 B.R. 533, 535 (Bankr.N.D.Ohio W.D.1985); *Rappaport v. Commercial Banking Corp. (In re Rappaport)*, 19 B.R. 971, 973 (Bankr.E.D.Pa.1982). *Cf. Warren v. Taff (In re Taff)*, 10 B.R. 101, 106 (Bankr.D.Conn.1981) ("The historical purpose of exemptions, whether in bankruptcy circumstances or otherwise, is to protect a

---

debtor is permitted, even if he lacks an equity interest in the property, to avoid the fixing of a judicial lien on the property if that avoidance would allow him to enjoy an exemption provided by § 522(b)."). *See also Chesanow v. W.H. Squire Co. (In re Chesanow)*, 25 B.R. 228, 230 (Bankr.D.Conn.1982).

**3.** The fresh start "gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns *at the time of bankruptcy*, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934).

debtor from creditors by permitting him to retain the basic necessities of life so that after his creditors have levied on or receive all nonexempt property, the debtor will not be left destitute and a public charge.").

The opposing line of cases determines that a court "need look no further than the statute itself" and since "[s]ection 522(f) states 'that the debtor may avoid the fixing of a lien on an interest of the debtor in property *to the extent* that such lien impairs an exemption....' [a] lien larger in amount than the exemption available to the debtor does not impair that exemption." *In re Opperman*, 943 F.2d 441, 443–44 (4th Cir.1991). *Accord In re D'Amelio*, 142 B.R. 8, 10 (Bankr.Mass.1992) ("[T]he plain meaning of the statute" permits nonconsensual lien to survive bankruptcy.); *In re Prestegaard*, 139 B.R. 117, 119 (Bankr. S.D.N.Y.1992) ("[A] judicial lien larger in amount than the homestead exemption does not impair the exemption if the exempt portion is carved out of the lien. The better reasoned approach is to protect the debtor's homestead exemption to the extent of the express limitations set forth in 11 U.S.C. § 522(f)(1) and not create an additional avoidance power with respect to judicial liens that do not actually interfere with the debtor's homestead exemption."); *In re Cerniglia*, 137 B.R. at 725 ("[A] plain reading of § 522(f)(1) ... allows a debtor to avoid judicial liens only in the amount of his exemption."); *City Nat'l Bank v. Chabot (In re Chabot)*, 100 B.R. 18, 20 (Bankr. C.D.Cal.1989), *aff'd* 131 B.R. 720 (C.D.Cal. 1991) ("The plain language of Section 522(f)(1) cannot be read to allow the debtors to have their cake and eat it too.").[4]

## IV.

### CONCLUSION

The court concludes that allowing the creditors' judicial lien to remain in place on the debtors' residence impairs the debtors' exemption. The residence, which presently has a value of $221,000.00, is encumbered

by mortgages totaling $291,00.00. The debtors are presumably paying the mortgages in order to keep possession of their home. Permitting the creditors' judicial lien to remain in place, in effect, places a dead hand on the residence. The judicial lien will continue to accrue interest. The debtors' incentive to pay down the mortgages, maintain and improve the property will be seriously blunted, if not destroyed. Should the debtors seek to refinance the mortgages or to sell the residence, the creditors' lien will be an effective block to any such action. In the court's view, the creditors lose nothing by a ruling to avoid their lien in full except the power to hinder.

The court concurs with those courts that hold that taking a broad view of § 522(f) gives "effect to the legislative will by implementing its objective and policy ... [and assures] that the debtors gain a fresh start in their financial lives." *Galvan*, 110 B.R. at 451. The language of § 522(f)(1)—"to the extent that such lien impairs an exemption"—does not exclude the right of the debtor to remove the dead hand effect of a judicial lien. *Cf. Bowmar: Avoidance Of Judicial Liens That Impair Exemptions In Bankruptcy: The Workings of 11 U.S.C. § 522(f)(1)*, 63 Am.Bank.J. 375, 388 (1989) ("A lien may be avoided to the extent that it impairs an exemption, which is not necessarily the same as the extent of the exemption itself.").

The debtors' motion to avoid the fixing of the creditors' judicial lien in full is granted. It is

SO ORDERED.

---

4. No court which permits the judicial lien to be only partially avoided has addressed the question of what happens when there are two judicial liens. Do both liens remain on the residence, but only the prior judicial lien suffers reduction by the allowed exemptions, with the inferior judicial lien remaining untouched?