In re E.C. HENDERSON and Phyllis
Henderson, Debtors.

E.C. HENDERSON and Phyllis
Henderson, Appellants,

v.

Lee BELKNAP, Appellee.

Civ. No. SA–93–CA–0095.

United States District Court,
W.D. Texas,
San Antonio Division.

April 1, 1993.

James Samuel Wilkins, San Antonio, TX,
for Lee Belknap.

Jess Vince Hightower, San Antonio, TX,
for E.C. Henderson and Phyllis Henderson.

### *ORDER*

SUTTLE, Senior District Judge.

Pending before the Court is the Appeal of
Order Denying Motion to Avoid Judicial Lien
Pursuant to 11 U.S.C. § 522(f)(1) filed by
E.C. and Phyllis Henderson on February 23,
1993 and the Response filed by Lee Belknap,
Appellee herein, on March 10, 1993. Having
reviewed the respective briefs of the parties
and the record on appeal, the Court enters
the following findings and order.

I. *Factual and Procedural
History of the Case*

On October 26, 1990, Lee Belknap ob-
tained a Texas state court judgment against
E.C. and Phyllis Henderson in the amount of
$197,667.21. Belknap filed an abstract of
judgment in Caldwell County, Texas on No-
vember 29, 1990, thereby creating a judicial
lien against all the non-exempt real property
of the Hendersons.

On June 19, 1991, the Hendersons filed for
relief under Chapter Seven of the Bankrupt-
cy Code. At the time of the filing, the
Hendersons owned 131 acres of real property
in Caldwell County, Texas, which is exempt
under Texas law as a rural homestead. On

June 17, 1992, the Bankruptcy Court denied the Hendersons' discharge pursuant to § 727 of the Bankruptcy Code. On May 21, 1992, the Hendersons filed a motion to avoid the judgment lien under Bankruptcy Code section 522(f)(1) on the ground that it impairs their homestead exemption. Belknap opposed the motion, arguing that the Hendersons' discharge had been denied and the judicial lien does not "impair" the homestead exemption because it does not attach to the homestead under Texas law and therefore cannot be avoided pursuant to § 522(f)(1). Following a hearing on the motion, the Bankruptcy Court entered an order on December 21, 1992 denying the Hendersons' motion. 155 B.R. 157. The Hendersons then filed the instant appeal.

### II. *Issue*

The sole issue presented for resolution is: Does a judicial lien "impair" a Texas homestead under 11 U.S.C. § 522(f)(1), even though a judicial lien does not "attach" to a homestead under Texas law?

### III. *Standard of Appellate Review*

■ The issue before the Court is a purely legal issue and therefore is subject to *de novo* review. *In re Robinson,* 114 B.R. 716, 718 (D.Colo.1990).

### IV. *Analysis*

■ The natural starting point to resolving the issue is 11 U.S.C. § 522(f)(1). Section 522(f)(1) provides as follows:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien.

*Id.* There once was uncertainty whether a debtor could use § 522(f) if his exemptions were created by state law and not federal law. However, it has been conclusively re-solved that state law controls what property is exempt but federal law determines the availability of the lien avoidance provision. *In re Robinson,* 114 B.R. at 718. Therefore, a debtor with state-created exemptions is entitled to the protection of § 522(f). *Id.* at 719.

A debtor seeking to avoid a lien on exempt property under § 522(f)(1) must satisfy a three-pronged test.

(1) The lien must be a judicial lien;

(2) The lien must be against an interest of the debtor in property; and

(3) The debtor must be entitled to the exemption that the lien would impair.

*In re Inman,* 131 B.R. 789, 791 (Bankr. N.D.Tex.1991); *In re Underwood,* 103 B.R. 849, 850–51 (Bankr.E.D.Mich.1989); *In re Shands,* 57 B.R. 49, 50 (Bankr.D.S.C.1985).

No dispute exists as to the first and third requirements. The parties agree that Belknap has a judicial lien. They also agree that the Hendersons are entitled to the homestead exemption under Texas law.[1] Thus, the only question to be answered is whether the judicial lien held by Belknap impairs the Hendersons' interest in their homestead exemption in the subject real property. The Bankruptcy Court held that it does not.

It is no mild understatement to say that there is a disagreement among the courts that have ruminated on this issue as to what is the answer. Situated on one side of this division are courts which hold that, where a judgment lien cannot attach to a debtor's homestead under the forum state's law, the judgment lien cannot be held to "impair" the debtor's homestead exemption for purposes of avoidance under § 522(f)(1). *In re Cerniglia,* 137 B.R. 722 (Bankr.S.D.Ill.1992); *In re Chabot,* 131 B.R. 720 (C.D.Calif.1991); *In re Finch,* 130 B.R. 753 (S.D.Tex.1991); *In re Spearman,* 124 B.R. 620 (E.D.N.Y.1991); *In re Del Vecchio,* 101 B.R. 803 (Bankr.S.D.Fla. 1989);[2] *In re Zachary,* 99 B.R. 916 (S.D.Ind.

---

**1.** *See* the Texas Constitution, Article XVI, §§ 50 and 51; Vernon's Texas Property Code Annotated, § 41.002.

**2.** The Florida Constitution provides as follows:

(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon ... the following property ...

(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres

1989); *In re Fry,* 83 B.R. 778 (Bankr.Col. 1988);[3] *In re Goodwin,* 82 B.R. 616 (Bankr. S.D.Fla.1988). This is the analysis applied by the Bankruptcy Court in the instant case in reaching its decision to deny the Hendersons' motion to avoid.

However, the more well-reasoned analysis, and the one which this Court elects to follow, is advanced in the opinions of the courts arrayed against them on the other side of the division. These courts adhere to the view that the mere existence of a judgment lien, although not attaching to the exempt homestead, impairs the debtor's constitutional homestead exemption and, consequently, is avoidable under § 522(f)(1). *See In re Bland,* 760 F.2d 1252 (11th Cir.1985); *In re Bradlow,* 119 B.R. 330 (Bankr.S.D.Fla.1990); *In re Watson,* 116 B.R. 837 (Bankr.M.D.Fla. 1990); *In re Robinson,* 114 B.R. 716 (D.Colo. 1990); *In re Calandriello,* 107 B.R. 374 (Bankr.M.D.Fla.1989); *In re Bird,* No. 88–8184–Civ–Aronovitz, slip op. at 9 (S.D.Fla. 1989), *reversing,* 84 B.R. 858 (Bankr.S.D.Fla. 1988); *In re Underwood,* 103 B.R. 849 (Bankr.E.D.Mich.1989); *In re Hutchinson,* 92 B.R. 950 (Bankr.M.D.Fla.1988); *In re Sanderfoot,* 92 B.R. 802 (E.D.Wisc.1988); *In re Dixon,* 85 B.R. 745 (E.D.Ohio 1988). However, this specific issue has been addressed by only two bankruptcy courts in Texas.

In *In re Inman,* 131 B.R. 789 (Bankr. N.D.Tex.1991), Inman, the debtor, entered into a settlement agreement and agreement to pay judgment with his creditor, Dallas Flower Market, Inc. ("DFM"). Therein Inman agreed to have judgment entered against him, and granted and assigned to DFM "an interest in and a right to proceeds from the sale of" his homestead located in Dallas, Texas. He then executed an assignment in favor of DFM which DFM filed in the Deed Record of Dallas County. An agreed final judgment was entered in the state court lawsuit. However, DFM, pursuant to the terms of the settlement, did not abstract the judgment.

Inman subsequently filed his petition under Chapter 7 of the Bankruptcy Code. He claimed exemptions under Texas law pursuant to 11 U.S.C. § 522(b)(2), and listed the Dallas property as his exempt homestead. Inman then filed a motion to avoid the assignment lien, an interest in his exempt homestead, and also the judgment lien pursuant to 11 U.S.C. § 522(f)(1).

The question initially confronting the bankruptcy court and the one to which it dedicated the bulk of its opinion was whether the assignment lien was a "judicial lien", as that term is defined in the Bankruptcy Code.[4] The bankruptcy court ultimately determined that the assignment lien did not constitute a "judicial lien" and could not be avoided. *In re Inman,* 131 B.R. at 793.[5]

The other question, the question of significance to this Court, was disposed of in a succinct one line finding.[6] The *Inman* court did not explain the analytical underpinning of its decision.

In *In re Swift,* 124 B.R. 475 (Bankr. W.D.Tex.1991), Swift, the debtor, obtained a

---

of contiguous land and improvements thereon ... upon which the exemption shall be limited to the residence of the owner.
Florida Constitution, Article X, Section 4.

3. The exemption allowed to Colorado residents as a homestead is found in Colorado Revised Statutes, Section 38–41–201, *et seq.* Section 38–41–201 states:

"Every homestead in the state of Colorado occupied as a home by the owner thereof or his family shall be exempt from execution and attachment arising from any debt, contract, or civil obligation...."
*Id.*

4. The bankruptcy court found that "[t]hat portion of the settlement resulting in the judgment caused a merger as to the settlement and the judgment lien, but the judgment and assignment lien do not appear to have merged." *In re Inman,* 131 B.R. at 793. As a result, it was bound to determine whether either the assignment lien or the judgment lien could be avoided under § 522(f)(1).

5. The bankruptcy court based its decision on the fact that the assignment lien was the product of a consensual arrangement between the parties and had not been obtained by judgment or through any other legal proceeding. *Id.*

6. The *Inman* court concluded that "the Judgment lien does constitute a judicial lien to which § 522(f)(1) is applicable" and allowed Inman to avoid it. 131 B.R. at 793.

divorce in 1989. Pursuant to the divorce decree, Swift was awarded the homestead, in return for which he granted his ex-wife a lien on his homestead, agreeing that, should the sale of another house given to her not yield at least $98,000 upon sale netting at least $82,500 to her, she could then recover any deficiency out of Swift's homestead whenever it was sold.

In 1990 Swift filed for Chapter 7 relief. Creditors GNA Life Insurance Companies ("GNA") and Bank of San Antonio ("Bank–SA") joined in the trustee's objections to the exemptions claimed by Swift. In particular, the creditors claimed that the ex-wife's interest in his homestead was not protected by Swift's claimed homestead exemption and was therefore subject to attachment. They further argued that Swift was attempting to exploit his own bankruptcy to shelter his ex-wife's interest in the property. Swift, in turn, filed a motion to avoid the creditors' judicial lines on his homestead pursuant to § 522(f)(1). Therein he asserted that his ex-wife simply acquired a lien on his homestead and nothing more. Consequently, his interest extended to the entire property and the judicial liens of GNA and Bank–SA could be avoided under § 522(f)(1).

The bankruptcy court rejected the creditors' construction of the divorce decree and held that the judicial liens could be avoided, stating:

> There is nothing in the divorce decree that indicates that any form of interest was conveyed to Mary Swift. She was instead awarded a lien to secure repayment of a property settlement which *represented* her marital interest in the homestead. "[I]n a divorce action a lien may be placed upon a spouse's real property homestead to secure the payment of the amount awarded to the other spouse for that other spouse's homestead interest." *Lettieri v. Lettieri,* 654 S.W.2d 554, 559 (Tex.Ct.App.—Ft. Worth 1983, writ dism'd).
>
> Mary Swift's lien is not itself protected by David Swift's homestead exemption. However, it is an enforceable lien against

that homestead under Texas law. *Lettieri,* 654 S.W.2d at 559 (holding that a party can foreclose on lien without violating homestead exemptions).

> Bank–SA, GNA and Mary Swift all acquired liens on the property. "[T]he Texas statutes and constitutional provisions respecting homestead specify the types of indebtedness for which there may be a valid lien on the homestead. Liens for any other purpose are invalid." *Matter of Daves,* 770 F.2d 1363, 1370 (5th Cir.1985). The motion before the court requests only avoidance of Bank–SA and GNA's liens. The debtor's motion as to the creditors' liens, pursuant to 11 U.S.C. § 522(f), is granted as to the debtor's interest in the homestead, which extends to that portion encumbered by Mary Swift's lien interest as well.

*In re Swift,* 124 B.R. at 487 (emphasis in original). Again, however, the bankruptcy court did not make known the basis for its implicit finding that the creditors' judicial liens "impaired" Swift's homestead exemption under § 522(f)(1).

Although no Texas case has been found, this Court has discovered two out-of-state opinions, both of which involve facts slightly, but not critically, different from those of this case.

In *In re Robinson,* 114 B.R. 716 (D.Col. 1990), the Robinsons filed for relief under Chapter 7 and claimed their $2,000.00 equity interest in their home as exempt from the bankruptcy estate under the earlier mentioned Colorado Homestead Exemption, Colo.Rev.Stat. §§ 38–41–201, 202 (1982). After filing for bankruptcy, the Robinsons learned that Mr. Robinson's ex-wife had filed a judgment lien against the Robinsons' resident.[7] They then filed a motion to avoid the judicial lien under § 522(f)(1) and Mrs. Robinson filed her opposition thereto. The bankruptcy court, after noting a split between the bankruptcy judges within the district, elected to follow the position espoused in *Fry, supra.* Accordingly, it denied the motion to avoid, finding that the judgment lien did not impair

---

7. The judgment arose out of Mr. Robinson's failure to pay a portion of a property settlement to

his ex-wife awarded in their divorce action.

the Robinsons' homestead exemption because a judgment lien does not automatically attach to real property in Colorado. The Robinsons appealed.

The District Court reversed the bankruptcy court decision. Although acknowledging the holding in *Fry* and similar holdings by the courts in the Sixth Circuit, it rejected the reasoning advanced in *Fry* and its progeny. The more reasonable interpretation of § 522(f)(1), it found, was contained in the cases rejecting *Fry*, explaining:

Disagreement with Judge Brumbaugh's view in *Fry* centers on the meaning of "impair." The problems with *Fry's* narrow interpretation of the term "impair" are outlined in Judge Brook's decision in *Packer v. General Motors Acceptance Corp. (In re Packer)*, 101 B.R. 651 (Bankr.D.Colo. 1989).

[A] [s]urviving judicial lien that is avoidable may impair, or appear to impair, debtor's rights. The word "impair" is defined in Black's Law Dictionary, Fourth Revised Edition, at page 885 as follows: "To weaken, to make worse, to lessen in power, diminish, or relax or otherwise affect in an injurious manner." Section 522(f) provides for avoiding the fixing of a judicial lien to the extent it impairs an exemption. Recognizing that in Colorado a judicial lien doesn't attach to an exempt portion of property, still a judicial lien potentially impairs a debtor's right to claim and protect an exemption, or to otherwise set with certainty and clarity the relative rights of the debtor and a secured creditor on specific exempt property. A debtor's total inability to use Section 522(f), to fix at a time certain, the relative rights of the debtor and a judicial lien creditor in exempt property, may indeed "weaken ... lessen in power ... otherwise affect in an injurious manner" the debtor's rights. Absolute denial of access to Section 522(f) may leave debtor's title to real property clouded, lead to future litigation, prevent a closing, preclude title insurance, requiring posting of a bond,

or otherwise impair or impede a debtor's right to deal with his real property in a free and unfettered manner.

*Id.* at 653. Expanding on his earlier decision in *In re Hermansen*, 84 B.R. 729, Judge Brooks gives five additional reasons why the § 522(f) power should be available here:

(1) to encourage the debtor's fresh start, (2) to make clear that the lien does not survive bankruptcy, (3) to fix the relative rights of debtor and secured creditor at the time of bankruptcy, (4) to establish notice and certainty of secured creditors' rights to property, and (5) to erase any uncertainty created by § 522(c) that the debtor's exempt property is not subject to his pre-petition debts. *Packer*, 101 B.R. at 653; *see also In re Duden*, 102 B.R. [797,] at 798–99 (District Court decision adopting the *Packer* rationale); *Lincoln v. Cherry Creek Homeowners Ass'n (In re Lincoln)*, 30 B.R. 905, 907–09 (Bankr.D.Colo.1983) (permitting avoidance under § 522(f)(1) and noting that, in Colorado, a judicial lien attaches to non-exempt real property when a transcript of the judgment docket is filed with the County Recorder).

*In re Robinson*, 114 B.R. at 719–20. Two additional reasons cited by the *Robinson* court for its rejection of the view articulated in *Fry* were that it rendered § 522(f)(1) meaningless and would allow Robinson's ex-wife to utilize § 522(f) to circumvent § 523(a)(5) of the Code.[8]

The other case which supplies additional and equally convincing reasons for this Court to decide the issue as it does is *In re Watson, supra*. Watson, like the Hendersons, filed for Chapter 7 relief and subsequently filed a motion to avoid the judgment lien of a bank, claiming that it impaired her homestead exemption. The bank, like Belknap, opposed the motion, arguing that Florida case law held that a judgment lien did not attach to homestead property as a matter of law, therefore avoidance was not an issue.

The bankruptcy court, after noting a split among the Florida bankruptcy courts, followed the line of cases holding that the mere

---

8. Section 523(a)(5) allows a debtor to discharge debts relating to a property settlement (as op-

posed to alimony, maintenance or support) arising out of divorce.

existence of a judicial lien impairs the homestead exemption and therefore was avoidable under § 522(f)(1). The correct analysis of the issue, in its view, was the one expressed in *In re Calandriello.* The *Calandriello* analysis was as follows:

> As any Florida lawyer who practices real property law knows, practical problems are presented when a certified copy of a judgment against a homeowner is recorded in the official records of the county in which the homeowner's homestead is located. Title companies generally treat such judgments as a cloud on title to the homestead unless avoided in bankruptcy, satisfied, or otherwise removed. When the homeowner later becomes a debtor in bankruptcy, the limitations on the debtor's actions that result denies the debtor the full enjoyment that the Florida Constitution provides. [T]he Bankruptcy Code contains a specific provision designed to prevent the debtors from experiencing problems of this sort. *In re Calandriello* at 375.

*In re Watson,* 116 B.R. at 838. Like the *Watson* court, this Court believes that *Calandriello* articulates the real, practical ramifications of a recorded judicial lien that counsel a rejection of the restrictive, unrealistic reasoning of *Fry* and its progeny. In fact, this same conclusion was reached in a recent Texas appellate court decision.[9] Still other compelling reasons exist for allowing avoidance of the judicial lien.

■ As often noted, taking a broad view of § 522(f)(1) carries out "the legislative will by implementing its objective and policy ... [and assures] that the debtors gain a fresh start in their financial lives." *In re Galvan,* 110 B.R. 446, 451 (9th Cir. BAP 1990). That Congressional intent is expressed in the following statement:

> Subsection (f) protects the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. The debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien....

■ The avoidance power is independent of any waiver of exemption. H.R.Rep. No. 95–595, 95th Cong., 1st Sess., 362 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 76 (1978); U.S.Code Cong. & Admin.News 1978, pp. 5787, 6318. As noted by the courts citing this congressional statement as support for their construction of § 522(f)(1), if the courts were to read § 522(f)(1) to allow undercollateralized judicial liens to remain on exempted property, any benefit arising from the debtor's postpetition efforts to pay down mortgage balances, maintain the property and make improvements to the property would flow to the prepetition creditor, not the debtor. *See In re LaPointe,* 150 B.R. 92 (Bankr. D.Conn.1993), citing *In re Galvan,* 110 B.R. 446, 449–451 (9th Cir. BAP 1990) (the intent of § 522(f) is to "leave enough property in the hands of the debtor to insure a 'fresh start' after discharge."; that "unsecured liens allowed to remain on the debtor's property will impair a debtor's fresh start by partaking in postpetition property acquisitions and equity build up."); *In re Braddon,* 57 B.R. 677, 679 (Bankr.W.D.N.Y.1986) (allowing the judicial lien to remain, "would frustrate the purpose of the fresh start by not providing the debtors with an accurate determination as to the finality of their debts and would hinder the debtors' ability to amass future equity."). Accord *In re Berrong,* 53 B.R. 640, 645 (Bankr.D.Colo.1985); *Morelock v. All Phase Elect. Supply Co. (In re Morelock),* 47 B.R. 533, 535 (Bankr. N.D.Ohio W.D.1985); *Rappaport v. Commercial Banking Corp. (In re Rappaport),* 19 B.R. 971, 973 (Bankr.E.D.Pa.1982). *Cf. Warren v. Taff (In re Taff),* 10 B.R. 101, 106 (Bankr.D.Conn.1981) ("the historical purpose of exemptions, whether in bankruptcy circumstances or otherwise, is to protect a debtor from creditors by permitting him to retain the basic necessities of life so that after his creditors have levied on or receive all nonexempt property, the debtor will not be left

---

9. In *Tarrant Bank v. Miller,* 833 S.W.2d 666 (Tex.App.—Eastland, 1992) (upholding district court's determination that bank's judicial lien, though unenforceable against homestead interest of homeowners, still cast a cloud on homeowners' title and award of damages for slander of title when bank refused to grant partial release to homeowners and thereby caused loss of sale of house).

destitute and a public charge."). Also, looking at the near future, at least one court has noted that "[s]hould the debtors seek to refinance the mortgage ..., the creditors' lien will be an effective block to any such action." *In re LaPointe,* 150 B.R. 92 (Bankr.D.Conn. 1993).

Yet another reason warranting construing § 522(f)(1) to allow avoidance of the judicial lien of Belknap is that doing so would harmonize the avoidance statute with the Texas homestead exemption laws.[10] As observed by Judge Kane in *Robinson,* the *Fry* construction renders § 522(f)(1) superfluous with regard to the homestead exemption and leads to absurd results. 114 B.R. at 720.

■ As the Texas courts have often stated, the laws of Texas granting a homestead exemption are most liberal. *Zwernemann v. Von Rosenburg,* 76 Tex. 522, 531, 13 S.W. 485, 489 (1890). "They are not only based upon a tender regard for the welfare of the citizen, but have for their object the stability and welfare of the state." *Andrews v. Security National Bank of Wichita Falls,* 121 Tex. 409, 417, 50 S.W.2d 253, 256 (1932). "The homestead exemption was founded on principles of soundest policy.... Its design was not only to protect citizens and their families from destitution, but also cherish and support in bosoms of individuals, those feelings of sublime independence which are so essential to maintenance of free institutions." *Franklin v. Coffee,* 18 Tex. 413, 416 (1857). Therefore, this provision has been guarded zealously by the courts of Texas. *Uptmor v. Janes,* 210 S.W.2d 235, 237 (Tex. Civ.App.—Waco 1948, no writ).[11] Pursuant

thereto, the Texas courts have consistently acknowledged that the universal rule of construction is that "the homestead law is entitled to the most liberal construction for the accomplishment of its objects." *Williams v. Williams,* 569 S.W.2d 867, 874 (1978) (quoting *Trawick v. Harris,* 8 Tex. 312, 316 (1852). *See also Andrews v. Security Nat. Bank,* 121 Tex. at 417, 50 S.W.2d at 256; *Wallace v. First Nat. Bank of Paris,* 120 Tex. 92, 102, 35 S.W.2d 1036, 1040 (1931); *Hall v. Fields,* 81 Tex. 553, 17 S.W. 82 (1891); *Blackburn v. Knight,* 81 Tex. 326, 331, 16 S.W. 1075, 1077 (1891); *Schneider v. Bray,* 59 Tex. 668 (1883) (homestead provisions of the organic law and statutes are to be liberally construed for the purpose of effectuating the wise and salutary provisions thereof); *Blum v. Gaines,* 57 Tex. 119, 121 (1882); *Black v. Rockmore,* 50 Tex. 88, 96 (1878); *Allison v. Brookshire,* 38 Tex. 199, 201 (1873); *Cocke v. Conquest,* 120 Tex. 43, 35 S.W.2d 673, 678 (1931) (rule that homestead laws are to be liberally construed to effectuate their beneficent purpose is one of general acceptation); *Kerens Nat. Bank v. Stockton,* 120 Tex. 546, 40 S.W.2d 7 (1931); *Lifemark Corporation v. Merritt,* 655 S.W.2d 310, 314 (Tex.Civ.App.—Houston [14th Dist.] 1983, *writ ref'd n.r.e.*); *Tolman v. Overstreet,* 590 S.W.2d 635, 637 (Tex.Civ.App.—Tyler 1979, no writ); *Vistron Corp. v. Winstead,* 521 S.W.2d 754, 755 (Tex.Civ.App.—Eastland 1975, no writ); *Simank v. Alford,* 441 S.W.2d 234, 237 (Tex.Civ.App.—Austin 1969, *writ ref'd n.r.e.*); *Crews v. General Crude Oil Company,* 287 S.W.2d 243, 247 (Tex.Civ. App.—Beaumont 1955, no writ);) *Long Bell Lumber Co. v. Miller,* 240 S.W.2d 405, 407

---

**10.** To understand and appreciate why and to what extent the citizenry of Texas cherish and the Texas judiciary and legislature safeguard the homestead exemption, see *Chase v. Swayne,* 88 Tex. 218, 30 S.W. 1049 (1895). However, perhaps the two most important amendments to art. XVI, § 51 have been adopted since *Chase.*

The first amendment, adopted in 1973, extended the benefit of the homestead exemption to unmarried adults. The second amendment came in 1983 and changed the urban homestead exemption from a value exemption to a one-acre exemption.

Although nearly a century has elapsed since the publication of *Chase,* the following observation by then Texas Supreme Court Chief Justice Brown holds as true now as then:

This short review of the history of homestead exemptions in this state shows that each and

every decision of the court which placed a limit or restriction upon the homestead has been met with legislative enactments and constitutional provisions overruling the decisions of the court, enlarging the value of the homestead exemption, and placing in the constitution safeguards against the contingencies of future judicial construction.

88 Tex. at 227, 30 S.W. at 1053.

**11.** For example, see *Patterson v. Federal Deposit Insurance Corporation,* 918 F.2d 540 (5th Cir. 1990) (holding that, under Texas law, maker of note secured by deed of trust was not estopped from claiming homestead exemption in foreclosure action by FDIC by virtue of contrary homestead disclaimer in deed of trust).

(Tex.Civ.App.—Amarillo 1951, no writ); *Orr v. Orr*, 226 S.W.2d 172, 173 (Tex.Civ.App.—Amarillo 1949, no writ); *Albers v. Saenger*, 222 S.W.2d 409, 411 (Tex.Civ.App.—Austin 1949, no writ); *Reconstruction Finance Corp. v. Burgess*, 155 S.W.2d 977, 980 (Tex. Civ.App.—Waco 1941, *writ ref'd*); *Panhandle Construction Co. v. Head*, 134 S.W.2d 779, 781 (Tex.Civ.App.—Amarillo 1939, *writ ref'd*). Texas federal courts have recognized this rule and followed it. *See Bradley v. Pacific Southwest Bank, F.S.B.*, 121 B.R. 306, 312 (N.D.Tex.1990); *In re Krug*, 102 B.R. 98, 99 (Bankr.W.D.Tex.1989). To adopt the construction of § 522(f)(1) proposed by Belknap and the *Fry* faithful and disallow the avoidance would not effectuate the objective of the Texas homestead exemption. To the contrary, it would most likely lead to the situation in *Tarrant Bank v. Miller*, 833 S.W.2d 666 (Tex.Ct.App.—Eastland 1992, no writ).

In *Tarrant Bank v. Miller*, Miller and his wife sued the Tarrant Bank under the Texas Declaratory Judgment Act for a determination that the bank's judgment lien[12] was unenforceable against their homestead and for damages arising from slander of their title. The suit was filed when the bank refused the Miller's request for a partial release of its lien.[13] The state district court entered judgment for the Millers, and the bank appealed.

On appeal the bank argued that the trial court erred in granting judgment against it because there was no justiciable controversy between the parties. The bank based this argument on the fact that, under Texas law, a lien created by an abstracted judgment is unenforceable as to a homestead and, therefore, cannot cast a cloud on the homeowners' title, citing *Mauro v. Lavlies*, 386 S.W.2d 825 (Tex.Civ.App.—Beaumont 1964, no writ) as its supporting authority. The appellate court rejected the bank's argument on two counts.

First, the *Tarrant Bank* court found the bank's interpretation of the *Mauro* decision to be flawed:

*Because the lien is unenforceable as to the homestead does not mean that the lien does not cast a cloud on the title.* To so hold would mean that only enforceable claims could create a cloud.

For example, a complete stranger to the title through an error in the property description could have filed an instrument which purported to convey the owner's property. Could the grantee in the misfiled deed refuse to file a correction instrument claiming that it was obvious that his grantor had no title so therefore he could not have had title? Such a position is untenable; the document, although invalid to convey title, is still a cloud. *A claim does not have to be valid or enforceable to cast a cloud on one's title.* Logic would dictate that most clouds arise from invalid claims on the title.

833 S.W.2d at 667–668 (emphasis added).

The appellate court also found *Mauro* was factually distinguishable. First, in the case before it there was evidence that the Millers had attempted to sell their property and could not do so because the judgment against them had been abstracted. There was no such evidence in *Mauro*. Moreover, there was also evidence that a title insurance company had refused to issue title insurance on the Millers' property where the judgment had been abstracted. Again, there was no such evidence in *Mauro*. 833 S.W.2d at 668.

The Hendersons are of advanced age. Although there is no evidence here that they presently have a contract for sale of their homestead property, it is only a matter of time until they are forced to sale their rural homestead due to their age. However, if this court allows the judicial lien held by Belknap to remain in place, the Hendersons and Belknap will then find themselves in the same predicament as their counterparts in *Miller*. Unless Belknap agrees to a partial release of his lien, the Hendersons would have no other recourse than to file a state court action for declaratory judgment and for slander of title. This, of course, would entail the expenditure

---

12. Actually, the bank was the successor in interest to a judgment obtained in Tarrant County against the Millers for a delinquent car loan. The judgment was later abstracted and filed of record in Brown County, the county of residence of the Millers.

13. The Millers had requested the partial release because a title company would not issue an owner's title insurance policy on the Millers' house without a partial release. The Millers had entered into a contract to sell their urban residential homestead.

of money and time by the Hendersons on court costs and attorneys fees.

In short, the Hendersons would be beset by some, if not all, of the undesirable consequences which the various aforementioned courts predicted would arise from the adoption and application of *Fry*. Belknap, on the other hand, "loses nothing by a ruling to avoid [his] lien in full except the power to hinder." *In re Lapointe, supra*. In light of these consequences, this Court cannot affirm the Bankruptcy Court decision to deny the motion to avoid the judicial lien.

## CONCLUSION

The Court concludes that the Bankruptcy Court erred in denying the Motion to Avoid Judicial Lien. Because this is a purely legal issue, there is no need to remand to the Bankruptcy Court.

Accordingly, it is ORDERED that the Bankruptcy Court's Order of December 21, 1992 denying the Motion to Avoid Judicial Lien be, and the same is hereby, REVERSED. The Motion to Avoid Judicial Lien is GRANTED.