**In re Steven F. EHLEN and Beth L. Ehlen, Debtors.**

**Bankruptcy No. 95–14204–7.**

United States Bankruptcy Court, W.D. Wisconsin.

Oct. 16, 1996.

Howard D. White, White, Welter & Schilling, Eau Claire, WI, for Debtor.

Richard D. Humphrey, Assistant U.S. Attorney, Madison, WI, for Farm Service Agency.

## MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

THOMAS S. UTSCHIG, Bankruptcy Judge.

The debtors' motion to avoid the lien of Farm Service Agency ("FSA") raises serious issues of statutory interpretation which may substantially impact the ability of debtors, especially farmers, to obtain the benefits of lien avoidance under 11 U.S.C. § 522(f). FSA holds a blanket lien on the farm assets of the debtors, and has objected to their motion. The debtors are represented by Howard D. White, of White, Welter & Schilling, and FSA is represented by Assistant U.S. Attorney Richard D. Humphrey. When the debtors filed bankruptcy, they selected the Wisconsin exemptions and claimed a number of farm implements as exempt property under Wis.Stat. § 815.18(3)(b). That section grants each of the debtors a $7,500.00 exemption in "business and farm property." No party in interest objected to their exemptions within the time proscribed by Fed. R.Bankr.P. 4003(b). In their motion, the debtors now seek to avoid FSA's lien as a "nonpossessory, nonpurchase money" security interest in tools of the trade within the meaning of § 522(f).

FSA initially disputed the value of the items in question, but the parties have apparently resolved this issue. In addition, FSA concedes that its lien is "nonpurchase money" in nature. FSA's sole objection is that the debtors cannot avoid more than $10,000.00 of its security interest. This contention is premised upon FSA's interpretation of 11 U.S.C. § 522(f)(3), a recent addition to the Bankruptcy Code. According to FSA, this section places a "cap" on the debtors' lien avoidance powers which precludes them from avoiding the lien to the full extent of the state exemption.

■ To reach a conclusion on this issue, the Court must begin with § 522(f) itself. When Congress enacted the Bankruptcy Code in 1978, § 522(f) and the concept of lien avoidance were quite controversial. Indeed, the section had to survive numerous constitutional challenges before emerging unscathed as one of the primary tools available to individual debtors. *See, e.g., In re Thompson*, 867 F.2d 416 (7th Cir.1989); *Matter of Barnett*, 35 B.R. 1 (Bankr.Pa.1981); *In re Cunningham*, 17 B.R. 463 (Bankr.Ky.1981). In pertinent part, § 522(f) states:

> Notwithstanding any waiver of exemptions, but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> .     .     .     .     .
>
> a nonpossessory, nonpurchase money security interest in any—
>
> .     .     .     .     .
>
> implements, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor ...

*See* 11 U.S.C. § 522(f)(1)(B)(ii).

The underlying intent of the Bankruptcy Code is to provide financial relief for overburdened debtors while at the same time offering equitable treatment to creditors. *In re Deardorff*, 195 B.R. 904, 911 (Bankr. W.D.Wis.1996). The legislative history to § 522(f) indicates that the section was enacted to further the "fresh start" policy so inherent in the Code. *See* S.Rep. No. 95–989, 95th Cong.2d Sess. U.S.Code Cong. & Admin.News 1978 5787, 5862; *see also In re Wright*, 156 B.R. 549, 554 (Bankr.N.D.Ill. 1992).[1] Thus, taking a broad view of the section carries out "the legislative will by implementing its objective and policy [and assures] that the debtors gain a fresh start in their financial lives." *In re Henderson*, 168 B.R. 151, 156 (W.D.Tex.1993), *aff'd*, 18 F.3d 1305 (5th Cir.1994) (*quoting In re Galvan*, 110 B.R. 446, 451 (9th Cir. BAP 1990)).

The section does have its critics, and even the Seventh Circuit has questioned the relative merit of a policy which grants relief from consensual liens. In *In re Patterson*, 825 F.2d 1140 (7th Cir.1987), the debtors sought to avoid a lien on certain farm equipment and cattle, which they alleged constituted tools of their trade. In the course of its decision, the court observed:

> [W]inning this case might be a boon to the [debtors] ... [but] it would not help farmers as a group; it would raise the cost of credit to them. [A farmer] ... controls the timing of bankruptcy and can use it to take maximum advantage of the exemptions. Knowing this makes lenders even more reluctant to lend money to farmers at interest rates that farmers can afford to pay. A law that grants farmers advantages in bankruptcy helps some farmers when the law is passed but may hurt more of them by making farm credit more expensive in the future.

825 F.2d at 1142. Of course, as the *Patterson* court itself acknowledged, the mere fact that there may be some disagreement regarding the policies undergirding § 522(f) does not mean that the section should be construed narrowly. *Id.; see also Thompson*, 867 F.2d at 419 (despite policy concerns, the language of § 522(f) is clear and will be enforced accordingly).

Policy issues aside, the actual implementation of § 522(f) has also engendered debate. Recently, the Supreme Court settled one such debate when it decided *Owen v. Owen*, 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). In *Owen*, the Court concluded that a lien may be avoided under § 522(f) if the lien impairs an exemption the debtor could have claimed "but for the lien itself." 500 U.S. at 309–12, 111 S.Ct. at 1836–37, 114 L.Ed.2d at 358–59. Accordingly, the Court held that a debtor who utilizes state exemptions may use § 522(f) and avoid a lien to the full extent of the exemption the debtor would be entitled

---

1. The legislative history specifically states that:
   [To] protect the debtor's exemptions, his discharge, and thus his fresh start ... [t]he debtor may avoid ... to the extent that the property could have been exempted in the absence of the lien ... a nonpossessory, nonpurchase money security interest in certain household and personal goods.

to claim if the lien did not exist. *Id.* at 312–14, 111 S.Ct. at 1837, 114 L.Ed.2d at 360. As will be seen shortly, the *Owen* decision plays an important role in the outcome of this case.

■ The *Owen* decision raised considerable consternation among creditors' groups, and it was against this backdrop that Congress considered and ultimately enacted the Bankruptcy Reform Act of 1994, Public L. No. 103–394, 108 Stat. 4106 (1994). Included in that legislation was the amendment to § 522(f) which is at the heart of the present controversy. This addition to the lien avoidance provisions of the Code states that:

> In a case in which State law that is applicable to the debtor—
>
> > (A) permits a person to voluntarily waive a right to claim exemptions under subsection (d) or prohibits a debtor from claiming exemptions under subsection (d); and
> >
> > (B) either permits the debtor to claim exemptions under State law without limitation in amount, except to the extent that the debtor has permitted the fixing of a consensual lien on any property or prohibits avoidance of a consensual lien on property otherwise eligible to be claimed as exempt property;
>
> the debtor may not avoid the fixing of a lien on an interest of the debtor or a dependent of the debtor in property if the lien is a nonpossessory, nonpurchase money security interest in implements, professional books, or tools of the trade of the debtor or a dependent of the debtor or farm animals or crops of the debtor or a dependent of the debtor to the extent the value of such implements, professional books, tools of the trade, animals, and crops exceeds $5,000.00.

11 U.S.C. § 522(f)(3).

It appears that there are only two published decisions which offer any insight into the possible interpretation of this amendment to the Code, and they take diametrically opposing viewpoints. The debtors cite *In re Zimmel,* 185 B.R. 786 (Bankr.D.Minn.1995), in support of their contention that Congress added this language to § 522(f) to prevent debtors in a few states from using generous state "tools of the trade" exemptions in the lien avoidance context. In response, FSA cites *In re Parrish,* 186 B.R. 246 (Bankr. W.D.Wis.1995), in which the court determined that the interaction between § 522(f)(3) and Wis.Stat. § 815.18(12) essentially capped each debtor's lien avoidance powers at $5,000.00.

The Court's chore is to decipher the actual meaning of § 522(f)(3) as it applies to this case. FSA submits that the "plain meaning" of the section dictates that *all* debtors who utilize state exemptions are subject to a federally mandated "cap" on their lien avoidance powers. The "plain meaning" approach to statutory construction is perhaps one of the most politically and intellectually charged landmarks on the current judicial landscape. In recent years, the Supreme Court has instructed that statutes are to be construed in accordance with their "plain meaning," without resort to legislative history or other extraneous sources. *See Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391, 397–98 (1992) ("We have stated time and again that courts must presume that a legislature says what it means and means in a statute what it says there."); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290, 299 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases' [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.").

There has been considerable criticism of the Supreme Court's "plain meaning" philosophy.[2] Still, the notion that a court must

---

2. A great deal of this criticism stems from the concern that the study of language is at best an inexact science, and words are often subject to multiple interpretations. *See generally* Thomas G. Kelch, *An Apology for Plain–Meaning Interpretation of the Bankruptcy Code,* 10 Bankr.Dev.J. 289 (1994). In truth, perhaps Lewis Carroll best captured the essence of this debate:

> "When I use a word," Humpty Dumpty said in a rather scornful tone, "it means just what I choose it to mean—neither more nor less."
> "The question is," said Alice, "whether you can make words mean so many things."
> "The question is," said Humpty Dumpty, "which is to be master—that's all."

start with the statutory language itself is certainly not a revolutionary thought. *See Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442, 452 (1917) ("[T]he meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain ... the sole function of the courts is to enforce it according to its terms.") When examining that language to ascertain its meaning, the court should:

> accord words and phrases their ordinary and natural meaning and avoid rendering them meaningless, redundant, or superfluous ... view words not in isolation but in the context of the terms that surround them ... likewise construe statutes in the context of the entire statutory scheme and avoid rendering statutory provisions ambiguous, extraneous, or redundant ... favor the more reasonable result ... [and] ... avoid construing statutes contrary to the clear intent of the statutory scheme.

*In the Matter of Merchants Grain, Inc.,* 93 F.3d 1347, 1353 (7th Cir.1996).

If the legislative intent is not clear from the statutory language, or if that language is ambiguous, other sources may be consulted in the course of the Court's investigation. *Germain,* at 254–55, 112 S.Ct. at 1149–50, 117 L.Ed.2d at 398. After careful consideration of § 522(f)(3), together with *Parrish* and *Zimmel,* the Court must conclude that this is indeed one of those "rare cases" in which the statute is truly ambiguous and subject to a variety of interpretations. *Id.;* see also *Ron Pair,* at 242, 109 S.Ct. at 1031, 103 L.Ed.2d at 299. While the section clearly places a cap on the lien avoidance powers available to debtors, it is difficult, if not impossible, to ascertain the particular class of debtors subject to this cap from an examination of the statute alone.

The use of the conjunctive "and" between subparts (A) and (B) of § 522(f)(3) indicates that both requirements must be satisfied before the section is applicable to a particular debtor or class of debtors. *Parrish,* 186 B.R. at 247; *Zimmel,* 185 B.R. at 791. Further interpretation is clouded by the fact that subparts (A) and (B) each contain two alternatives, either of which can render *the particular subpart* applicable to this case. In this regard, § 522(f)(3)(A) provides that state law must either permit the "voluntary waiver" of the right to claim the federal exemptions *or* prohibit a debtor from claiming those exemptions. Wisconsin has not opted out of the federal exemption scheme, and thus does not "prohibit" debtors from claiming the federal exemptions.[3] Accordingly, the question under subpart (A) is whether Wisconsin law permits debtors to "voluntarily waive" their right to claim the federal exemptions.

The notion that a state may "permit" debtors to waive their right to the federal exemptions obviously does not comport well with the traditional interaction between state and federal law. Indeed, as the *Zimmel* court noted, it is unlikely that *any* state law would be construed to permit debtors to waive the federal exemptions, since waivers of exemptions are strictly unenforceable under § 522(e). *Id.* However, it is not clear that Congress meant that the section be interpreted in this way. In *Parrish,* the court had relatively little trouble in determining that this language relating to the "voluntary waiver" of exemptions simply refers to the typical situation in which the debtor *chooses* the state exemptions over the federal ones. 186 B.R. at 247.

■ The *Zimmel* court specifically rejected this interpretation of the subsection, and observed that the creditors in that case could not "explain why such a simple application might be expressed in such a convoluted way." 185 B.R. at 791. The court's concern regarding such an interpretation is well taken. The *Parrish* analysis of subpart (A) renders the section potentially applicable to *all* debtors who utilize the state exemptions

---

Lewis Carroll, *Through the Looking Glass and What Alice Found There,* Clarkson N. Potter, Inc. p. 80–81.

3.  Under the Bankruptcy Code, states are allowed to opt out of the federal exemptions by specifically prohibiting debtors to claim the exemptions enumerated in § 522(d). The authority for such state legislation is found in § 522(b)(1). While the majority of states have in fact opted out, Wisconsin has not.

when filing bankruptcy. Still, the legislative history provides that § 522(f)(3) applies "in cases in which the debtor has *voluntarily chosen the State exemptions* or has been required to utilize State exemptions because a State has opted out of the federal exemptions." 140 Cong.Rec. H10,764 (daily ed. Oct. 4, 1994), H.R.Rep. No. 835, 103d Cong., 2d Sess. 41, 42 (1994) [emphasis added]. As the section does not apply when the debtor chooses the federal bankruptcy exemptions, the *only* class of debtors excepted from coverage under subpart (A) are those debtors who utilize the federal exemptions. *Id.; see also Parrish,* 186 B.R. at 247. Accordingly, Wisconsin debtors can in fact fall within the purview of § 522(f)(3)(A).

■ However, this does not end the Court's inquiry, because § 522(f)(3)(B) must also cover the particular class of debtors before the corresponding "cap" on lien avoidance will apply. Subpart (B) provides that the section applies where state law either (i) permits debtors to claim unlimited exemptions, "except to the extent that the debtor has permitted the fixing of a consensual lien on any property," or (ii) otherwise "prohibits avoidance of a consensual lien on property." For whatever reason, the statute offers no guidance at all regarding what state provisions might rise to the level of a "prohibition" against lien avoidance. In *Parrish,* the court found that Wis.Stat. § 815.18(12) prohibits lien avoidance even though there is no reference to the avoidance of liens in the text of the provision.[4] The *Zimmel* court's contrary approach is based upon the premise that lien avoidance "refers to a remedy that allows the stripping of liens in various situations," and is distinguishable from a mere exemption claim. 185 B.R. at 792. Exemptions only apply to the debtor's interest in property, but lien avoidance can apply to property that was not exempt in the first instance. *Id.*[5]

Again, given this confusion, it is necessary to consult sources outside the statutory language. The legislative history, however, is as silent as the statute itself on this issue. As a result, the Court must probe further into the events surrounding the enactment of § 522(f)(3) to determine congressional intent. As indicated previously, the Supreme Court's decision in *Owen* troubled many creditors' groups across the country. In *Owen,* the Supreme Court ruled that a Florida exception to its homestead exemption for certain preexisting judicial liens did not preclude the debtor from using § 522(f) to avoid the liens. The Court stated:

> We have no doubt, then, that the lower courts' unanimously agreed-upon manner of applying § 522(f) to federal exemptions—ask first whether avoiding the lien would entitle the debtor to an exemption, and if it would, then avoid and recover the lien—is correct. The question is whether a different interpretation should be adopted for the state exemptions. We do not see how that could be possible. Nothing in the text of § 522(f) remotely justifies treating the two categories of exemptions differently ... [i]n light of the equivalency of treatment accorded to federal and state exemptions by § 522(d), we conclude that Florida's exclusion of certain liens from the scope of its homestead protection does not achieve a similar exclusion from the Bankruptcy Code's lien avoidance provision.

At 312–13, 111 S.Ct. at 1837–38, 114 L.Ed.2d at 360.

As the *Zimmel* court recognized, the *Owen* decision altered and in essence overruled the prior practice in a number of states, most notably Florida, Louisiana, and Texas. The Fifth Circuit had previously ruled that in

---

4. The *Parrish* court found that Wis.Stat. 815.18(12), "despite its opacity and its confusing disjunctions," nonetheless expressly prohibited the avoidance of a consensual lien. 186 B.R. at 248. In pertinent part, this section states:

> Limitation on Exemptions. No property otherwise exempt may be claimed as exempt in any proceeding brought by any person to recover the whole or part of the purchase price of the property or against the claim or interest

of a holder of a security interest, land contract, condominium or homeowner's association assessment or maintenance lien or both, mortgage or any consensual or statutory lien.

5. Indeed, as one court recently stated, "[i]t is clear that the analysis of lien avoidance ... involves more than the determination of exemption rights under state law." *In re Mulch,* 182 B.R. 569 (Bankr.N.D.Cal.1995).

those cases in which either the Texas or Louisiana exemptions applied, § 522(f) was not available to debtors. *See Matter of Maddox*, 15 F.3d 1347 (5th Cir.1994); *Matter of Bessent*, 831 F.2d 82 (5th Cir.1987); *In re Kelly*, 133 B.R. 811 (Bankr.N.D.Tex.1991). The rationale adopted in these cases was virtually identical to the approach subsequently rejected by the Court in *Owen*. *Maddox*, 15 F.3d at 1351; *Zimmel*, 185 B.R. at 794. Apparently spurred to action by what they perceived to be a shift in the law in favor of debtors, creditors sought redress from Congress. In 1993, H.R. 339 was introduced in the U.S. House of Representatives. The purpose of the bill was to amend § 522(f) and make it subject to a new subsection (n). Proposed § 522(n) was to read as follows:

> The debtor may not avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b)(2), if—
>
> (A) such lien is a nonpossessory, non-purchase money security interest in any tools of the trade, implements, animals, or crops, and
>
> (B) the State law referred to in such subsection prohibits the debtor from avoiding the fixing of such lien to such extent.

H.R. 339, 103d Cong., 1st Sess. (Jan. 3, 1993).

This legislation was never enacted. However, when Congress was considering the Bankruptcy Reform Act of 1994, Phillip S. Corwin, Director & Counsel, Operations and Retail Banking, American Bankers Association, submitted a statement at a hearing before the Subcommittee on Economic and Commercial Law of the Committee on the Judiciary, House of Representatives. This statement discusses not only H.R. 339, but also the terms of § 522(f)(3) as actually enacted. The statement begins as follows:

> Restoring the unencumbered flow of agricultural and small business credit would be greatly aided by the legislative reversal of [the *Owen* decision] ... In that case, the

court held that § 522(f) of the Bankruptcy Code ... applies in so-called opt out states ... Unless legislatively reversed, the doctrine [of *Owen*], insofar as it applies to implements or tools of the trade of the debtor, will have a devastating impact on the availability of credit to sole proprietorships; spanning the gamut from entrepreneurial high-tech startup firms to family farmers.

*Hearing before the Subcommittee on Economic and Commercial Law of the Committee on the Judiciary, House of Representatives*, 103d Cong., 2d Sess., August 17, 1994, U.S.Gov. Printing Office.

The statement further reflects secured creditors' concern about the disparity between the federal exemption for "tools of the trade," which was then capped at $750.00, and the far more generous amounts available at state law.[6] According to Mr. Corwin, the bankruptcy courts had implemented *Owen* "in a manner extremely detrimental to the interests of lenders and for the future availability of credit to farmers and small businesses." *Id.* He cited cases in which courts had allowed lien avoidance on significant pieces of equipment, including dental equipment, computer hardware and software, and various tractors and other farm equipment. *Id.* The statement then characterizes H.R. 339 as a narrow legislative reversal of *Owen*. The statement reads as follows:

> H.R. 339 is designed to preserve a narrow category of consensual non-possessory, non-purchase-money liens from avoidance in bankruptcy. While its "tools of the trade" language applies generally to all debtors, the main purpose of the bill is to protect agricultural lenders who take security interests in agricultural property, and to thereby preserve the availability of agricultural loans. H.R. 339 is a narrowly drafted bill which does not restore nonavoidability to all types of liens avoidable under § 522(f) ... H.R. 339 is in no way applicable to nonpurchase-money liens on household furnishings and goods, and thus

---

**6.** The Reform Act raised the federal "tools of the trade" exemption to $1,500.00. *See* 11 U.S.C. § 522(d)(6). Despite this increase, however, the

federal exemption remains far less generous than the exemptions available in many states, including Wisconsin.

would have no detrimental effect on consumer debtors.

*Id.*[7]

Mr. Corwin also addressed the terms of Section 313 of the Bankruptcy Reform Act, which became the present § 522(f)(3). He stated that "while [the amendment] eliminates the *Owen* problem in such states as Louisiana and Florida, it fails to provide the same benefit to Texas lenders and borrowers due to a technical defect." He then proposed the addition of the second clause of § 522(f)(3)(B), which provides for coverage in a state which "prohibits the avoidance of a consensual lien on property otherwise eligible to be claimed as exempt." *Id.*

The statement of Mr. Corwin is replete with references to states "such as" Louisiana, Florida, and Texas, so it is clear that the proposal was intended to correct a perceived problem in more than these three states. The question is whether Wisconsin is such a state. To find the answer, perhaps the best course of action is to compare Wisconsin law to the laws of the named states and determine whether there are sufficient similarities to justify the conclusion that Wisconsin was one of the targets of § 522(f)(3).

As indicated in Mr. Corwin's statement, Louisiana was clearly the model for the first portion of subpart (B). Louisiana grants debtors an unlimited exemption in tools of the trade but excepts from the exemption "property upon which a debtor has voluntarily granted a lien." *See* La.Rev.Stat.Ann. § 13:3881(A)(2)(a), 13:3881(B)(2), and 13:3885. (West 1995). There is clearly no similarity between Louisiana's tools of the trade exemption and Wisconsin's business and farm property exemption. Under Wis. Stat. § 815.18(3)(b), the exemption is limited to $7,500.00 per debtor. Accordingly, Wisconsin does not permit "exemptions without limitation in amount," and this part of the section does not apply.

Thus, even though § 522(f)(3)(A) facially applies to debtors located in Wisconsin, the "cap" on lien avoidance is applicable only if Wisconsin debtors are covered by the last phrase in subpart (B). This portion of § 522(f)(3)(B) was added specifically to benefit Texas lenders, although it likely applies to all debtors similarly situated. Texas provides debtors with a "personal property exemption" in an aggregate value of $60,000.00 per family, or $30,000.00 per individual debtor. *See* Tex.Prop.Code.Ann. §§ 42.001(a)(1), (a)(2), and 42.002(a)(4) (West 1995). Despite the generous dollar amount of this exemption, it is limited by the following provision:

> Personal property, unless precluded from being encumbered by other law, may be encumbered by a security interest . . . or . . . lien fixed by other law, *and the security interest or lien may not be avoided on the ground that the property is exempt under this chapter.*

Tex.Prop.Code.Ann. § 42.002(b) [emphasis added].

This is the type of state provision Mr. Corwin and the creditors' groups contemplated when they proposed the addition of the second phrase in § 522(f)(3)(B). The question is whether Wis.Stat. § 815.18(12) is sufficiently similar to this Texas provision to justify a finding that Wisconsin falls under subpart (B). In *Parrish* the court found an express prohibition against lien avoidance in the "opacity and . . . confusing disjunctions" of § 815.18(12). 186 B.R. at 247. This Court agrees that the Wisconsin provision is muddled and vague. However, unlike the Texas provision cited above, there is no reference to lien avoidance in the text of § 815.18(12). The Wisconsin statute simply provides that property subject to a consensual lien may not be claimed as exempt.

·This Court agrees with the decision in *Zimmel.* There the court found that Minnesota law did not contain a provision comparable to the one found in Texas exemption law.

---

7. As can be seen from a comparison between the language of H.R. 339 and the actual text of § 522(f)(3), the original relief sought by creditors was far broader than what they ultimately received from Congress. As proposed, H.R. 339 would have totally precluded debtors subject to its terms from utilizing the lien avoidance provisions of the Code in connection with "tools of the trade." Section 522(f)(3) affords debtors significantly more relief, even though it may be less than what they could have received under state law. This fact alone, however, does not automatically mandate that the "cap" in question applies in Wisconsin.

Accordingly, the court held that § 522(f)(3) was inapplicable in Minnesota. 185 B.R. at 795. The court was not swayed by the fact that Minnesota law did not permit debtors to claim encumbered property as exempt. Put simply, the court found that Minnesota law "does not speak to lien avoidance," and a broader reading of § 522(f)(3) would do more than reverse *Owen.* It would alter the settled law in jurisdictions where state law had not been found to preclude lien avoidance by debtors who chose the state exemptions. *Id.*

In this case, the Court reaches a similar conclusion about Wis.Stat. § 815.18(12). The Court can glean no express prohibition against lien avoidance from the language of this section, because it does not speak to lien avoidance. It speaks to the types of property which qualify as exempt. Such a statute is far closer to the type of provision found in Louisiana and similar states. Like the Louisiana statute, Wis.Stat. § 815.18(12) defines or qualifies the Wisconsin exemptions in a way that precludes debtors from claiming the property as exempt. Unlike Louisiana law, Wisconsin does not offer unlimited exemptions, and this indicates that there must be a third group of states contemplated by § 522(f)(3)—a group not covered by the "cap" on avoidance.

■ It is clear that § 522(f)(3)(B) contains two *mutually exclusive* bases for coverage. A state may qualify for coverage under the first phrase, which deals with states like Louisiana that offer unlimited exemptions but exclude property subject to consensual liens from those exemptions. A state may also fall within the purview of the second phrase, which covers those states that specifically preclude "lien avoidance" of consensual liens. However, there is nothing in the text of the section which indicates that it is applicable to *all* states, and the comments of Mr. Corwin suggest the opposite. Accordingly, the fact that Wisconsin law is not sufficiently similar to Louisiana law to fall within the scope of the first phrase of subpart (B) does not mandate the conclusion that Wisconsin is subject to the second portion of the subpart.

Indeed, FSA's construction of the second part of § 522(f)(3)(B) essentially consumes the first part, and thus violates a fundamental tenet of statutory construction—that the Court is to avoid rendering any part of a statute redundant or superfluous, and is to construe a statute in such a manner as to give effect to all of its provisions. *Merchants Grain,* 93 F.3d at 1353. FSA's interpretation of the section as a blanket cap on all debtors requires the Court to characterize Wis.Stat. § 815.18(12) as a "prohibition" against lien avoidance. If this were the correct analysis of the statutory language, Louisiana would also fall within the scope of the second part of the section because Louisiana carves out a similar exception for consensual liens in its exemption law. As a result of this interpretation, the first part of § 522(f)(3)(B) would be redundant and unnecessary. The Court must thus construe the second phrase in a more limited manner so that the first retains meaning.

FSA's interpretation of § 522(f)(3)(B) is also in conflict with the stated legislative purpose behind the amendment. It is clear from the statements made by Mr. Corwin in support of both H.R. 339 and the present § 522(f)(3) that the section was intended to be a "narrow" reversal of *Owen.* It was intended simply to correct a problem in a few states, not necessarily alter the settled law of the entire nation. *Zimmel,* 185 B.R. at 795. Wisconsin debtors have long been able to claim the full benefit of the Wisconsin exemptions in the lien avoidance context, and nothing in Wisconsin law appears to bar such a result. *See Thompson,* 867 F.2d at 418–19; *Patterson,* 825 F.2d at 1146. There is nothing in the legislative history or Mr. Corwin's statement which would indicate that the section was intended to overturn such long-standing legal principles.

Finally, an expansive reading of § 522(f)(3) is not in keeping with the intent of § 522(f) itself. The section was adopted to further the "fresh start" policy of the Code and to assure that debtors have a measure of financial stability as they proceed forward with their lives. *Henderson,* 168 B.R. at 156. FSA's interpretation of § 522(f)(3) interferes with this clear legislative policy and is unwarranted because there is scant, if any, evidence that Congress desired such a radical alteration of the status quo. *Zimmel,* 185

B.R. at 795. Accordingly, the debtors may avoid FSA's lien to the full extent of the exemption available under Wis.Stat. § 815.18(3)(b), which in this case constitutes an aggregate amount of $15,000.00.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.